# Crass *v.* Scruggs & Co.

*Action upon Common Counts for Work and Labor Done.*

1. *Contract; rule for construction.*—In construing a contract, it must be read and interpreted as a whole, giving due weight to all its parts and due consideration to the relations of the parties, their connection with the subject matter and the circumstances under which it was made.

2. *Same; same; time of payment; conditional engagement.*—Where the time of payment in a contract is stated in doubtful terms, in order to give effect to the intention of the parties, that construction will be indulged which avoids the conversion of an absolute into a conditional engagement.

3. *Same; same; case at bar.*—A contract which stipulates for absolute performance of certain work relative to the construction of a railroad, and provides in absolute and unconditional terms for the payment of specified prices for the work, and which contains a clause to the effect that "payments are to be based on engineer's estimates and to be made on the 15th of each month, or as soon thereafter as the railroad company pays or causes to be paid the" contractor, imports an absolute engagement to pay on the 15th of each month or within a reasonable time thereafter for the company to make the payments, or cause the payments to be made; and is not a conditional engagement dependent upon payment to the contractor by the company.

4. *Same; same; same.*—A practical interpretation of such contract, as making payment conditional on payment by the railroad company, can not be inferred from the facts that the subcontractors did not demand payment for three years after completion of their work, that they recognized the contractor as having a contract with the railroad, and that their work was estimated by the railroad company's engineer.

5. *Construction of contract by parties; ambiguity.*—The construction by the parties thereto of a contract ambiguous in its terms, aids and is sometimes conclusive in its judicial construction, but where the terms are clear, misconstruction of the contract by either party is immaterial, save so far as it may have induced action by the other party.

6. *Release of debt or demand; consideration.*—A valuable considera-

[Crass v. Scruggs & Co.]

tion is necessary to support the release or discharge of a debt or demand; as much so as it is to support any other contract.

7. *Release or composition of debt; construction of statute.*—The statutes, (Code of 1886, §§ 2774, 2775), having reference to release and discharge and payment and settlement of debts and demands, relate to executed contracts, and not to mere executory agreements, dependent upon the doing or happening of something in the future; and under these statutes, as at common law, a mere agreement for satisfaction of a debt or demand, without performance, has no effect or operation upon the debt or demand.

8. *Same; same; case at bar.*—An agreement by railroad sub-contractors who have an unconditional claim against a contractor for work done, reciting that the railroad company proposed to reorganize and issue bonds for its indebtedness, and providing that the sub-contractors should accept such bonds for their claim, does not constitute a release or discharge of the contractor from his obligation to the sub-contractors, within the meaning of the statutes (Code of 1886, §§ 2774, 2775), where it is shown that there was no re-organization of the railroad company and no bonds were issued and delivered to the plaintiff as contemplated in the contract.

9. *Action to recover for work done on railroad; general affirmative charge for the plaintiff.*—In an action to recover for work done on three sections of a railroad under a contract, where the evidence is without conflict that upon two of the sections the work had been performed as contracted for, and as matter of law plaintiffs were entitled to recover the amount due therefor, but as to the work done on the third section there was conflict in the evidence, the giving of an instruction to the jury that if they believe the evidence plaintiffs were entitled to recover, does not constitute reversible error; since, if the defendant feared that the charge as given might mislead the jury, he should have requested an explanatory instruction, or one limiting the plaintiff's recovery for the work done upon the two sections, about which there was no conflict.

APPEAL from the City Court of Decatur.

Tried before the Hon. WILLIAM H. SIMPSON.

This was an action brought by the appellees, J. W. Scruggs & Co., against the appellant, J. T. Crass. In view of the opinion on this appeal, it is unnecessary to set out at length the prolix and multiplied pleadings. The facts of the case necessary to an understanding of the decision are sufficiently stated in the opinion.

The second agreement, which was entered into in 1892 between the defendant and the plaintiffs, and which is referred to in the opinion, was in words and figures as follows: "Know all men that whereas on the 12th and 13th of July, 1892, a meeting of the Decatur, Chesa-

peake and New Orleans Railroad Co. was held in Shelbyville, Tennessee, for the purpose of compromising the existing indebtedness of said Railroad Company; also to effect a reorganization of same, to the end that speedy completion of said railroad may be made. And whereas the following proposition was made to the creditors, viz.: First, that a committee composed of seven of the largest creditors of said road, to be called the Reorganization Board, is to be created who is to issue a sufficient amount of first mortgage bonds: First, to pay 25 per cent. of amount of claims of attaching creditors. Second, to complete the line of road between New Decatur, Alabama and Shelbyville, Tennessee. But in no event, is the amount of first mortgage bonds to exceed 300,000 or 350,000 dollars. Third, to issue second mortgage bonds sufficient to pay the remaining seventy-five per cent. of claims of attaching creditors. Now, therefore, we being creditors of said railroad company, as subcontractors under J. T. Crass, do bind ourselves, our heirs and legal representatives to accept the above mentioned proposition. We also bind ourselves, our heirs, and our legal representatives to pay in first mortgage bonds of said railroad company, our pro rata of all costs that may have accrued in the shape of court costs, attorneys' fees, and any other necessary expense that may have been incurred in the prosecution of and collecting any and all claims against said railroad company in which we have an interest." There was no reorganization and issue of bonds as contemplated in this contract.

On the trial of the cause there was a verdict and judgment for the plaintiffs, assessing their damages at $1,267.92. From this judgment the defendant appeals, and assigns as error the many rulings of the trial court to which exceptions were reserved.

O. KYLE and TOMPKINS & TROY, for appellant.—According to the contract under which the work was done, for which plaintiffs seek a recovery, the payment of the plaintiffs for such work was contingent upon the defendant being paid by the railroad company. The contract must be construed as written. Even if the court should consider that the position in which the plaintiffs were placed by the contract was a hard one, in that the payment for their labor was dependent upon the pay-

[Crass v. Scruggs & Co.]

ment to the contractor, it can not make the contract different than as expressed by its terms.—*Allen v. Mutual Com. Co.*, 101 Ala. 574.   If defendant and plaintiffs had not intended by their contract that defendant should not be liable to plaintiffs until he had received his pay, they would not have put the stipulation into the contract as we find it.   Under the circumstances existing at the time the contract was entered into, it was not unreasonable for defendant to wish to make it a condition precedent to his liability that he should first have been paid by the railroad company.   Why should the parties to the contract say that payment was to be made on the 15th of each month, or thereafter upon the happening of a contingency, unless the word "thereafter" is to be given some significance?   When we look at the circumstances surrounding the parties at the time the contract was made, it has the same meaning as if it had simply said that defendant was to pay plaintiffs as soon as the railway company paid him or caused him to be paid ; that it has the same meaning as if the words "on the 15th of each month" and "thereafter" had been omitted from the contract.—*Alexander v. Thomas*, 16 Q. B. 333, 71 Eng. Com. Law, 333 ; *Benedict v. Cowden*, 49 N. Y. 396 ; *Griel v. Solomon*, 82 Ala. 85 ; *Dearing v. Moffitt*, 6 Ala. 776 ; *American Exchange Bank v. Blanchard*, 7 Allen 333 ; *Cushing v. Field*, 70 Me. 50 ; *Corbett v. State of Georgia*, 24 Ga. 287 ; *Brooks v. Hargreaves*, 21 Mich. 254.

2.   By the execution of the second contract, there was a release and discharge of the defendant.   By such contract the plaintiffs agreed to look to the railroad company for payment.—*Good v. Cheesman*, 2 Barnwell & Adolphus, 328 ; *Boyd v. Hind*, 1 H. & N. Exchequer, 938 ; *Bank of Montgomery v. Ohio Buggy Co.*, 100 Ala. 626 ; *Steinman v. Magnus*, 11 East 390 ; *Eaton v. Lincoln*, 13 Mass. 424.

3.   Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions. *Paxton v. Smith*, 59 N. W. Rep. 690.   The construction of a contract by the parties thereto is of great weight in determining its meaning.—*May. &c. of New York v. N. Y. Ref. Construc. Co.*, 8 Misc. Rep. 61.   On the question of a contract, the way it was practically construed by the parties in acting on it, is admissible.—*Hill*

[Crass v. Scruggs & Co.]

*v. City of Duluth*, 58 N. W. Rep. 992; American Digest, (1894) 831.

E. W. GODBEY, *contra*.—The stipulation in the original contract, that Scruggs was to be paid on the 15th of each month, or as soon thereafter as the railway company should pay or cause Crass to be paid, must be read in the light of the surrounding circumstances. It was clearly not the intention of either party that the work should be done, and if Crass should never be paid, Scruggs should receive nothing. The stipulation was intended clearly to provide for a reasonable time after the 15th for Crass to get his pay. The stipulation is merely an alternative one. It is expressed as an after-thought.—*Eaton v. Yarborough*, 19 Ga. 82; *Ubsdell v. Cunningham*, 22 Me. 124; *Curnan v. Delaware & O. R. Co.*, 34 N. E. Rep. 201; *Huntsville B., L. &c. Co. v. Corpening*, 97 Ala. 681; *Griel v. Lomax*, 89 Ala. 420; *Genet v. Pres. Del. & H. Canal*, 136 N. Y. 593; *Grimley v. Davidson*, 24 N. E. Rep. 439; *Gliddon v. McKinstry*, 25 Ala. 246; *Eaton v. Richeri*, 83 Cal. 185; *Lupton v. Freeman*, 46 N. W. Rep. 1042; *Jones v. Chaffin*, 102 Ala. 382.

The second contract, which was entered into, was ineffectual to relieve the defendant of the obligations imposed by the first contract. There was no liquidation, and in order that a readjustment of the claim should be binding and conclusive upon the parties, there must be a liquidation, and the measure of the liability of each party must be distinctly fixed.—Bishop on Contracts, § 57. The bonds agreed to be taken were non-existent, and there was no measure of damages for the breach of such second agreement. The agreement was inoperative and void, since the agreement to take non-existent bonds was without consideration.—*Booker v. Jones*, 55 Ala. 266; *Erwin v. Erwin*, 25 Ala. 236; *Howard v. E. T., V. & G. R. R. Co.*, 91 Ala. 268; *Moore v. Smith*, 19 Ala. 774. This second agreement was unilateral, and, therefore, not binding. An agreement must obligatory on both parties, or it can not bind either.—*Eskridge v. Glover*, 5 Stew. & Port. 264; *Campbell v. Lambert*, 51 Amer. Rep. 1; *Howard v. East Tenn., Va. & Ga. R. R. Co.*, 91 Ala. 269; *Branson v. Kitchenman*, 24 Atl. Rep. 61; *Stensgaard v. Smith*, 43 Minn. 11; *Smith v. Chilton*, 6 S.

E. Rep. 142; *Cooper v. Lansing Wheel Co.*, 94 Mich. 272; *Gardner v. Short*, 19 N. J. Eq. 341. The agreement was merely one of attempted compromise; was never acted upon or consummated. It is elementary that such negotiations do not become binding until performed. But the agreement amounts to no more than an accord without satisfaction. Such are uniformly held not to be binding.—*Young v. Jones*, 18 Amer. Rep. 279; *Holton v. Noble*, 23 Pac. Rep. 58; *Cannon Riv. Man'f'g Asso. v. Rogers*, 49 N. W. Rep. 128.

"The doctrine is elementary, that in order to make out the defense of accord and satisfaction, it must be shown that the agreement to accept something of value in satisfaction of the liability incurred, has been fully executed, and that the thing to be so taken has been accepted and received."—*Anderson v. Scholey*, 17 N. E. Rep. 125; *Burgess v. Denison, &c. Co.*, 9 Atl. Rep. 726; *Braun v. Keally*, 23 Atl. Rep. 389; *Hoxsie v. Empire Lumber Co.*, 43 N. W. Rep. 476; *Russell v. Lytle*, 6 Wend. 390.

The only thing Scruggs proposed to do was to take imaginary non-existent bonds on an unbuilt, unoperated and partly imaginary railroad. While, probably, certain bonds had, in fact, been issued upon this imaginary road, these bonds were not the subject of this agreement we now have in consideration. The bonds Scruggs was to get had not been issued, have never been issued to this day, and, doubtless will never be issued. Shall a person be held to have released his debt for something devoid of existence, then, now and forever? Is not such an agreement wholly without consideration? "If the thing has no existence there is no subject of sale, grant or mortgage."—*Booker v. Jones*, 55 Ala. 266. This second contract could not constitute a release, because there was no consideration paid to the plaintiffs.—*Booker v. Jones*, 55 Ala. 266.

BRICKELL, C. J.—The action, in which the appellees were plaintiffs and the appellant defendant, was for work and labor done and performed by the plaintiffs at the request of the defendant, on the track of the Decatur, Chesapeake & New Orleans railroad. The complaint contained two counts, which correspond to the common counts in assumpsit for work and labor

done and performed. The errors assigned are numerous, relating to the rulings of the court below on the extended and multiplied pleadings introduced in the course of the trial, the admission and rejection of evidence, and the giving or refusal of instructions to the jury. But the respective rights and liabilities of the parties are dependent on a few questions not of difficult solution. The first of which, and the more important, as the case is presented and has been argued, we propose to consider, is the construction and operation of the contract of July 23d, 1890, under which the greater part of the work was done.

Separating the contract into its component parts, the first clause is the undertaking of the plaintiffs to do the grading on designated sections of the track of the railroad, completing the work by the first day of September, 1890. The succeeding clause, is the engagement of the defendant, absolute and unconditional in its terms, to pay the plaintiffs specified prices for the work. The next clause, that from which the controversy arises, relates to the payment of these prices, and is in these words: "Payments based on engineer's estimates, and to be made on the 15th of each month, or as soon thereafter, as said R. R. Company pays or causes to be paid the said J. T. Crass." The last clause is a declaration that the time specified for the completion of the work, is of the essence of the contract.

The point upon which hinges the correctness of many of the rulings of the court below, is, whether payment to the plaintiffs of the promised compensation was conditional, dependent on payment by the railroad company to the defendant; or whether it was payable on the 15th of each month during the progress and on the completion of the work, or within a reasonable time thereafter for the company to make or cause payment to be made the defendant.

There is no doubt of the general rule, that a contract must be read and interpreted as a whole; all its provisions and stipulations must be regarded; and it is the duty of the court to consider the relations of the parties, their connection with the subject matter, and the circumstances under which it was made. And the construction must make the whole consistent, giving all the parts due weight.—*Pollard v. Maddox*, 28 Ala. 321 ; *Comer v. Bank-*

*head,* 70 Ala. 136 ; *Mason v. Ala. Iron Co.,* 73 Ala. 270. The contract was drawn not without care, and imports that some contractual relation existed between the defendant and the railroad company, by which the company was to pay him for the work, or to furnish him with the means of making payment. Whether there was such relation, and if it did not exist, whether the consequence was that the provision in reference to the postponement of payment to the plaintiffs, was not inoperative, was the matter of much contention in the court below. This is a phase of the case we do not deem it necessary to consider, for applying the general rules of construction we have stated, we do not doubt that the provision of the contract merely prescribes a *time* of payment, and not a *condition* upon which payment was dependent.

Can it be reasonably supposed it was contemplated, that the plaintiffs would devote their time, labor and means to the work, they were bound to complete within a particular period, without an absolute engagement from the defendant to pay them? There was no relation between the parties except that of employer and employés ; and it is to this relation, defining the services the plaintiffs were to render, and the compensation for the services the defendant was to make, the first and second clauses of the contract are devoted. The clauses are in terms as absolute and unconditional, as the subject matter permits ; and not more absolute and unconditional in respect to the one party than the other. The plaintiffs were bound to the performance of the work, without the expression of any condition dispensing with performance ; and without the expression of any condition, the defendant engaged to pay them a certain compensation. The contract is not divisible ; it is entire for the grading of the two sections ; and if it had been silent as to the time of payment for the work, payment could not have been demanded until the work was completed. This was known to the parties, and as the contract was drawn with care, the time of payment was not left to implication, but was the matter of express stipulation. And it must be observed, the stipulation speaks of payment, and of the time of payment, not of *non-payment,* nor in avoidance of the duty of paying. Any other construction would render the contract inharmonious in its several

[Crass v. Scruggs & Co.]

parts ; would place this stipulation in antagonism to the absolute engagement of the defendant to make payment of the compensation. The plaintiffs had no contract with the railroad company ; were unknown to it ; and to them the company owed no duty. The defendant had contractual relation with it, and from it expected to derive funds to meet his engagement to the plaintiffs ; and it was *time* to realize these funds for which he was contracting, and not freedom from liability if they were not realized.

· Similar contracts have been the subject of frequent construction, and the construction deemed best to give effect to the intention of the parties, has been that which avoids the conversion of an absolute into a conditional engagement, or which puts it into the power of a defendant at his mere option to pay, or not to pay. The recent case of *Page v. Cook*, 28 L. R. A. 759, is illustrative. The suit was on a note for the payment on demand of five hundred dollars, "payable when payer and payee mutually agree." As the parties had not agreed, it was insisted an action on the note could not be supported. The court said : "We think that it hardly could have been the intention of the parties to put it into the power of the defendant thus to avoid payment, and that it is more reasonable to construe it as meaning that it is payable when and after the payer ought reasonably to have agreed. * * * * * The promise to pay is absolute. It is only the time of payment which is left to future agreement. Evidently, it is expected, from the tenor of the note, that the parties will agree, and that a time will be fixed, and that the note will be paid. But no time is fixed within which the agreement is to be made. The law will, therefore, imply a reasonable time." In *McCarty v. Howell*, 24 Ill. 341, a note payable four months after date, containing the clause, "or as soon as I shall be able to collect a certain note against Abram Davis," was held to be due absolutely at four months, or sooner if the Davis note was collected. The court said, unless this was the construction, no meaning could be given to the promise of payment at "four months after date." In *Harlow v. Boswell*, 15 Ill. 56, a note payable "twelve months after date, * * * or as soon as I can sell the above amount of Allen's Vegetable Tonic," was deemed payable absolutely at twelve months. In

*Walters v. Mcbee*, 1 Lea, (Tenn.) 364, a note of date March 19th, 1862, was payable in gold or silver, on or before January 1st, 1865, with this clause added : "This promise to pay is on the condition, that the banks of Tennessee have resumed specie payments at that time, if not, as soon thereafter as they do resume specie payments." As the banks had not resumed specie payments, it was insisted that the note was not payable ; in other words, that the condition upon which payment depended had not happened, and its happening was of the essence of liability on the note. The court, not doubting that parties could make conditional or absolute contracts, and that if they were conditional until the happening of the condition they could not be enforced, would not yield assent, notwithstanding the terms of the last clause of the note importing a condition, to the proposition, that it was destructive of the unequivocal promise to pay on or before the first day of January, 1865 ; and held, the payee, not insisting on payment in specie, could maintain an action on the note at any time after January 1, 1865. In *Nunez v. Dantel*, 19 Wall. 560, the action was upon an instrument acknowledging indebtedness for services rendered containing this clause : "This we will pay as soon as the crop can be sold, or the money raised from any other source, payable with interest." The construction the instrument received was, that it was a promise to pay as soon as the crop was sold, or the money was received from any other source, or after the lapse of a reasonable time for the sale of the crop, or the derivation of the money from other sources ; that it was not intended if the crop was not raised, or was destroyed and never sold, or the money was not realized from other sources, that the debt should not be paid. "Such a result," it was said, "would be a mockery of justice." There are other authorities leading to the like conclusion, but we are content with a mere reference to them.—*Eaton v. Yarborough*, 19. Ga. 82 ; *Lewis v. Tipton*, 10 Ohio St. 88 ; s. c. 75 Am. Dec. 498 ; *Crooker v. Holmes*, 65 Me. 195 ; s. c. 20 Am. Rep. 687.

It is insisted that the parties construed the promise of payment as conditional—that the defendant was not under liability to pay the plaintiffs until the railroad company paid him. The facts upon which it is supposed this construction may be imputed to the plaintiffs

[Crass v. Scruggs & Co.]

are, that they recognized the defendant as having a contract with the railroad company—that the estimates of the work were made by the engineer of the company; and that before the commencement of this suit, near three years after the completion of the work, they made out no account against the defendant, making demand of its payment. This is a slender foundation on which to impute to the plaintiffs concurrence in a construction of the contract, converting the engagement of the defendant into a conditional promise, dependent on the action of the railroad company, over which the plaintiffs could have no control. When the words of a contract are ambiguous, of doubtful import, the construction given it by the parties in their mode of dealing under it, or by their mutual and concurring acts, are aids, and sometimes conclusive in its judicial construction. But the meaning, the true interpretation of this contract, in the eye of the law is clear, and if there had been misconstruction of it by either party, the misconstruction would have been immaterial, save so far as it may have induced action by the other party.—*Railroad Company v. Trimble*, 10 Wall. 367. The ascertainment of the kind and quantity of work done by the plaintiffs, was essential to the ascertainment of the measure of compensation to which they were entitled; and it was a stipulation of the contract that payment of it was to be based on the estimates of the engineer of the railroad company. If the company failed to make payment to the defendant on the 15th of each month, he was entitled to a reasonable time thereafter in which to realize from them, and until the lapse of this time, the plaintiffs could not demand payment from him. If the delay in making the demand could properly be attributed to the plaintiffs, the delay exerted no influence on the conduct of the defendant, was incapable of working him injury, and is not to be deemed in recognition of a construction of the contract favorable to the defendant and destructive of their rights; the most that can or ought to be said is, that the plaintiffs were inactive, when they could have been active. A reasonable time had elapsed, before the commencement of suit, for the railroad company to have made payment to the defendant, and it was for this *time* only, payment to the plaintiffs was deferred; on its expiration, the engagement of the defendant was

as absolute, as it would have been if the company promptly had made payment to him on the 15th of each month. Upon this hypothesis, many of the rulings of the court below proceeded, the correctness of which the assignments of error draw in question. We will not prolong this opinion by a consideration of them *seriatim*; for if there is technical error in any of them it was not of injury to the appellant.

The subsequent writing into which the parties entered, was strictly and purely tentative and executory. It contemplated the reorganization of the railroad company, and its issue of first and second mortgage bonds, by which the line of railroad would be completed, and by or from which its outstanding creditors could obtain payment. Vitality, or obligation, it was not intended should be imparted to whatever element of agreement or promise on the part of the plaintiffs, the writing may contain, until the reorganization and issue of the bonds were accomplished facts. The debt to the plaintiffs was in existence, past due, and it could not be discharged except by a release, or by satisfaction, for a valuable consideration. Mere promises by the defendant to pay it, could not add to its obligation; nor could mere expressions of a willingness and intention on the part of the plaintiffs, at some time in the future, or upon the happening of some future event, to accept something else than money in payment, discharge or satisfy it. The statutes to which we are referred by the counsel for the appellant, (Code of 1886, §§ 2774–75), while working radical change of the rules of the common law, in some respects, in reference to releases or discharges, or composition of debts—changes which are pointed out in *Singleton v. Thomas*, 73 Ala. 205; *Smith v. Gayle*, 68 Ala. 600; *Cowan v. Sapp*, 74 Ala. 44, and in other decisions — relate to executed transactions, and not to mere executory promises, dependent upon the doing or happening of some thing in the future. Nor have the statutes changed the elementary rule, that mere accord, a mere agreement for satisfaction, without performance, is of no operation upon a debt or demand.—1 Am. & Eng. Encyc. of Law, (2d ed.), 420-22, and authorities cited. The writing has in it no words of release, nor words expressive of an intent to release the defendant from liability, and if it had contained such words, it

would have been a *nudum pactum*, for a valuable consideration is as necessary to support a release, as to support any other contract.—20 Am. & Eng. Encyc. of Law, 744. There was no reorganization of the railroad company, and no issue of its bonds; and there could be no delivery of the bonds to the plaintiffs as was contemplated. These were the events, the reorganization of the company, the issue and delivery of bonds to the plaintiffs, which alone could vitalize whatever element of promise or agreement on the part of the plaintiffs the writing may contain.

On the request of the plaintiffs, the court instructed the jury, if they believed the evidence to find a verdict for the plaintiffs. There was no disputation that the plaintiffs had performed the work contracted for on sections 11 and 12 of the said road track, and that, according to the estimates of the engineer, it was of the value they claimed. As to these sections, the controversy was limited to the construction of the writings, and the court, observing the construction we have adopted, very properly could have given a much broader instruction if it had been requested—an instruction, that if the evidence was believed, the plaintiffs were entitled to recover for the work done on section 11 and 12. As to the work done on section 13, there was a conflict in the evidence, and without invading the province of the jury, the general instruction in reference to a recovery for the work could not have been given. If the defendant was apprehensive that the instruction as given might mislead the jury, an instruction explanatory, or limiting it to the work on sections 11 and 12 should have been requested.

We find no error in the record of injury to the appellant, and the judgment must be affirmed.

Affirmed.