# Mobile County *v.* Linch.

## Assumpsit.

(Decided November 30, 1916.   73 South. 423.)

1. **Contracts; Construction by Parties.**—The construction which the parties by their action placed upon a contract while the work was in progress will govern.

2. **Same; Evidence.**—Where doubt arises as to the sense or meaning of words or their application in construing the contract, their import may be shown by parol proof outside of the inference.

3. **Same; Construing Together.**—Where the record of the board of road commissioners was a part of the contract, and the two conflicted, they should be construed as a whole, giving effect to each provision if possible.

4. **Same; Evidence; Ambiguity.**—Where the record of the board of commissioners which was part of the contract, and the contract itself contained mere recitals and uncertain provisions rendering the contract ambiguous, parol and extrinsic evidence was admissible to determine the real contract.

5. **Pleading; In Bar as Abatement.**—Where the special pleas were offered in bar, but when construed against the pleader they merely showed the action prematurely brought, they were subject to demurrer.

6. **Same.**—Where plaintiff's contract was with the county and not with abutting owners, although full payment was not due until abutting owners had paid the county, that fact having been pleaded in bar but not in abatement, the plaintiff may maintain the action and recover the amount actually paid in.

[Mobile County v. Linch.]

7. **Work and Labor; Quantum Meruit.**—Pleas which merely allege breach of a special contract, while good as a defense to an action, upon the special contract, are not good as to the quantum meruit.

8. **Payment; Evidence; Conditional Warrant Under Protest.**—Where the county offered evidence of plaintiff's acceptance of conditional warrants in payment of the work done, it was competent for plaintiff to show that the acceptance was under protest.

9. **Contract; Evidence; Conditional Warrants.**—It was proper to admit in evidence warrants issued by the board of commissioners in payment to defendant for the purpose of showing construction of contract by the parties.

10. **Charge of Court; General Nature.**—Where the charges requested were all of a general nature upon matters properly submitted to the jury by the court in its oral charge, it was not error to refuse them.

11. **Same; Misleading and Abstract.**—It is proper to refuse charges which are misleading or abstract.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Assumpsit by E. S. Linch against Mobile County. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts sufficiently appear.

The following charges were given for plaintiff:

(1) An agreement by a county to pay for work and material in warrants of the county is equivalent to an agreement by the county to pay in money.

(3) If you are reasonably satisfied from the evidence that E. S. Linch performed work and labor and furnished material in constructing sewers, curbing, and culverts on Spring Hill avenue, and that the work so done was accepted by Mobile county, and that said work and labor was performed and said material furnished under a contract with Mobile county, by which contract said county undertook and promised to pay for 75 per cent. of the work each month on monthly estimates by the county engineer, and by which said contract said county undertook and promised to pay the remaining 25 per cent. when the work was completed and the property holders paid in, then plaintiff was entitled to recover 100 per cent. of all work so done and materials so furnished by him under the contract, and accepted by plaintiff.

(4) The board of revenue and road commissioners of Mobile county has no authority to audit and allow claims which do not constitute an indebtedness of the said county.

The following charges were refused to defendant:

1 and 2. Affirmative charges as to the second count.

(4) If you are reasonably satisfied from all the evidence in this case that plaintiff agreed with defendant to do the work and furnish the material provided for in the contract, and for which he is now suing, and that defendant would not be liable for the amounts not paid by them, and that defendant has turned over to him, or to persons authorized by him to receive it, all of the money so paid by the property owner, then you should not return a verdict for the plaintiff.

GORDON & EDINGTON, for appellant. HARRY T. SMITH & CAFFEY, for appellee.

MAYFIELD, J.—Appellee sued appellant county. The complaint was based solely on the common counts, one count being on account stated, and the others, for work and labor done. The case was tried on the general issue, and the trial resulted in a judgment in favor of the appellee for the amount sued for.

The evidence showed without dispute that there was a contract between the parties by which appellee was to grade and improve a certain public highway in Mobile county, and according to certain specifications, the work to be inspected and approved by a civil engineer in the employ of the county. There is likewise no dispute as to the amount which appellee was to receive for the work. Appellee performed his part of the contract in full, and his work was accepted and approved by the county. The payments were to be made in county warrants, and the greater part of the amount was to be paid in county warrants, issued monthly as the work progressed, but such monthly payments were never to be in full of the amount then actually due; a certain percentage was to be held back until the work was completed, or until certain conditions precedent were performed. And, according to one theory, the balance was never to be paid by the county, but by certain abutting owners along the improved highway.

The real dispute was whether the balance due appellee was contingent upon the payment by abutting owners, to the county, of certain amounts subscribed by them and agreed to be paid, or whether the appellee should look solely to the abutting owners therefor. This doubt or dispute arises from the uncertainty of the contract between the parties as to the mode and time of the payments agreed on. The result of the case, therefore, chiefly depends upon the construction of the contract.

The uncertainty grows out of some resolutions of the board of revenue and road commissioners, recorded on the minutes of that body, which resolutions were made a part of the contract. These provisions were as follows:

"Resolution adopted by the Board.

Minutes of June 30th, 1914.

"Moved that the contract for drainage and curbing be let to E. S. Linch who is the lowest bidder therefor, upon the understanding that he is to be paid in warrants of the county, to the extent of 75% of the work, until the work is completed and the property owners shall have paid for the work as shown by the agreement between the county and said owners.

"And upon the further distinct understanding that the property owners who have signed, or shall hereafter sign said agreement, shall pay for the property owners who do not agree to bear their proportionate share of the work, provided that no property owner shall be liable for more than one dollar per front foot of his own property.

"Moved further that the president be authorized to sign the contract.

"It is understood by the contractor, evidenced by his acceptance of the contract, that the county shall not be liable for the amounts not paid by any of the abutting property owners, but that he will look to them for same under this contract."

It is contended by appellant: (1) That the county is not liable at all, as for the balance sued for, because it is covered by amounts which "abutting property owners" had failed to pay, and that as to this, appellee had agreed to look to such abutting owners for payment, and not to the county; and (2) that if the county is ever liable to pay the balance , it will be only when all of the abutting owners have paid all they agreed to pay.

(1) The contention of appellee is that the county was to pay each month, as work progressed, 75 per cent., and that the remaining 25 per cent. was to be postponed until the abutting owners paid the amount they agreed to pay for the improvements. We are of the opinion that appellee's interpretation of the contract is correct. We are led to this conclusion largely by the fact that this seems to be the interpretation which the parties themselves, or their authorized agents and officers, placed upon it while the work was progressing, and when the question was presented by the issuance of conditional warrants for 75 per cent.

of the amount due, for sewer and curbing work, while uncondi-
tional warrants were issued as for 75 per cent. of the culvert
work, as for which the abutting owners were not to pay anything
to either the county or the contractor.   No other interpretation
of the contract will accord with the action of all the parties to the
contract, during its performance, or with the issuing of warrants
in payment of 75 per cent. of the work done, per month, as the
work progressed.

It is a sound and well-settled rule of construction of contracts
that, in arriving at a proper interpretation, the court should
examine the whole instrument with a view of ascertaining and
carrying into effect the purpose and object the parties had in
view, and thus give some effect to each clause, and reconcile ap-
parent discrepancies, if practicable.   Courts will never presume
that parties intended to insert in their contracts provisions
wholly incompatible and irreconcilable one with another.

(2) The true rule of interpretation of contracts is to make
them speak the intention of the parties as at the time they were
made.   A corollary of this rule is that, where any doubt arises
as to the true sense and meaning of the words themselves, or as
to their application under the particular circumstances, their
import may be shown by parol proof dehors the instrument itself.
The contract being complete with or without this phrase, it will
support a cause of action; and is not subject to demurrer for
uncertainty of meaning of words or phrases which do not render
it void.—1 Greenl. Ev. 278; *Chambers v. Ringstaff*, 69 Ala. 140;
*Cassels' Mill v. Strater Bros.*, 166 Ala. 283, 51 South. 969; 7
Mayf. Dig. 170-71.

It is contended by appellant here, and was so contended in the
court below, that the minutes of the board were the sole evidence
of the contract; and that, as they were in writing, and were the
contract, the contract therefore was matter of record, and could
not be contradicted or explained by parol proof; nor construed
with reference to the conduct or the intention of the parties; and
that their acts or words, in the performance of the contract,
could not be looked to in determining the meaning of the terms,
words, or phrases used in the minutes.

There are several reasons why the strict rules of evidence
which forbid the impeachment, contradiction, or explanation of
the meaning of certain parts of judicial records by oral evidence,
or by the conduct of the parties in reference to them, do not

apply to this case.   There is inserted in this record much which is not proper matter for judicial records; much of it is gratuitous recital of motions, debates, or suggestions of members, portions of which have no reference to the plaintiff or to his contract.   In the next place, in some of the provisions which on their face relate to the contract, the times and mode of payment are conflicting, if not self-contradictory; hence effect could not be given to the literal interpretation of all the provisions; to give effect literally to one, the one insisted upon by appellant, would, of necessity, deny or prevent effect to other provisions equally or more explicit.

(3) Surely, the contract and the record should be construed as a whole, according effect to each provision, if practicable, rather than following literally one which denies effect to others equally as certain and as important.

It is undoubtedly true that if a contract be definite and certain, and be in writing—especially so, and for a stronger reason, when it is made so of record—parol evidence is not admissible to contradict or impeach its provisions; but if it be indefinite or uncertain in its meaning, or there are latent ambiguities, parol proof is admissible and proper, not to contradict or impeach the writing or documentary and record evidence, but to explain the apparent inconsistencies and repugnant provisions, and thus give effect to the writing as a whole.   It is a well-recognized law of evidence that a patent ambiguity cannot be cured by oral or extrinsic evidence; but if the ambiguity be latent, the defect may be cured by such evidence.   As pointed out by STONE, J., in his valuable opinion in the case of *Chambers v. Ringstaff,* 69 Ala. 140, there are many instances in which the document in question or the ambiguities contained in it are not referable to either of these two classes, patent and latent; and Justice STONE styled this third class, "exceptional shadings of patent ambiguities."   He says:

"They arise, when on mere inspection, there does not appear to be an uncertainty or ambiguity.   This frequently grows out of a careless use of language, sometimes results from the many shades of meaning usage and provincial habit accord to the same word or expression.   Out of this has grown a seeming modification of the old rule as to patent ambiguity, which Mr. Justice Story has characterized as an intermediate class of cases, partaking of the nature both of latent and patent ambig-

[Mobile County v. Linch.]

uity. That learned jurist, in *Peisch v. Dickson*, 1 Mason, 9 [Fed. Cas. No. 10,911], says: 'In such a case I should think parol evidence might be admitted, to show the circumstances under which the contract was made, and the subject-matter to which the parties referred.' "

The contract and record in this case falls within this new class described, if not discovered, by Justices STORY and STONE. As has been pointed out by these and other justices and text-writers, including Parsons, Shaw, Gibson, Beasley, Cooley, and others, these rules for the interpretation of documentary evidence rest, for a foundation, upon the just principle that the law will not make, nor permit courts or juries to make, contracts for the parties, other than those which they have made for themselves. If a written contract be incurably uncertain, the law will not, or cannot, enforce it, and will not, under the pretense of so doing, set up a different and valid one in its stead. But the law will not pronounce a written contract incurably uncertain, and therefore void, until the document has been examined and viewed in all available lights and through all legal lenses; that is, by considering it from a collocation of all the words and phrases used in the document, and from all contemporaneous facts which extraneous evidence establishes, if such be admissible. If the intention, when thus established, be one which the words used in the contract can be made to express by a fair interpretation of meaning, the contract will be pronounced valid; otherwise it will be declared void. It is the words used in written documents which must prevail, and not an intention which the words used cannot be made to express by any fair rendering. The rules are therefore to enable the courts to distinguish between cases of curable and incurable defects and uncertainties. Where the meaning of words is plain and unquestionable, there is nothing to construe; to say that they mean something other than they do would be to make a language, as well as a contract, for the parties. If, however, the meaning of the language is uncertain, then the intention of the parties may be ascertained extrinsically, and this intention will be taken as the meaning of the parties expressed in the instrument, if it be in accord with a fair and rational interpretation of the words or language actually used.—2 Parsons on Contracts, p. 714 et seq.

(4) It should always be remembered that the very idea and purpose of construction imply an uncertainty of meaning; if

there be no uncertainty, there is no occasion for rules of construction. Mere recitals in written contracts or records are not accorded the same solemnity or verity as is attached to the terms of the contract itself; these recitals are treated as receipts or dates, and may be qualified or contradicted if the law of estoppel does not prevent. It therefore follows that the written evidence of the real contract between the parties to this suit was of such nature and character, and had so many mere recitals and uncertain provisions as to the times and modes of payment, and so much which related to transactions between the county and the abutting owners, and these transactions were so related to the contract and transactions between the county, its agents, and the plaintiff, that parol evidence and extrinsic evidence is not only proper, but necessary, to determine what was the real contract.

We are not of the opinion that evidence was offered by either party for the purpose of making, or having a tendency to make, a different contract, or to vary or contradict the contract which was in writing; but on the contrary, we think it aided in ascertaining what was the contract actually made. It is therefore unnecessary to treat separately each objection and exception to such evidence, though each has been so examined. If it could be said that any should have been excluded which was offered by, and allowed to plaintiff, it was in each instance to meet similar evidence offered by the defendant, or the ground of objection was not well taken; for example, some of the objections were on the ground that the question called for an unauthorized opinion or conclusion of the witness, and we hold that this ground was not well taken, but we do not mean to hold that as to such question there were any valid objections.

A great deal of time has been bestowed on this record. The case has been well argued and well briefed by counsel for both parties; and we find no ruling on the evidence, when considered in connection with the whole record, which will authorize a reversal.

(5) The county interposed some special pleas in bar of the action. These pleas set out the resolution of the board, relating to the contract, some of which is copied above, and concluded as follows: "And defendant alleges that the abutting property owners to the highway upon which said work was done by the plaintiff have not paid the amounts due by them as shown by the

agreement between the county and the said property owners, but that so much money as has been paid by the said abutting property owners has been paid over to the plaintiff or to other parties who held warrants for the amounts issued by the said defendant at the instance of the said plaintiff; wherefore the defendant says that it is not liable to this plaintiff in any amount at this time under said contract."

Demurrers were interposed, and sustained, to these special pleas, both as originally filed and as amended. It is sufficient to say that if these pleas can be said to contain facts sufficient to show a defense to the action, they set up matter in abatement, and not in bar; and they were interposed as pleas in bar. The most that the pleas show, construing them most strongly against the pleader, is that the action was prematurely brought; that the defendant will not be liable until the abutting owners have paid to it the amounts due by them, but that it will be liable when such amounts are so paid by such third parties. This is matter in abatements and not in bar.—*Moore v. Cowan*, 173 Ala. 536, 55 South. 903; *Karthaus v. N. C. & St. L. Ry.*, 140 Ala. 433, 37 South. 268; *Coalter v. Bell*, 2 Stew. & P. 358; *McKenzie v. McColl*, 3 Ala. 516. These pleas merely set up a condition precedent to payment, and not one to liability. They do not set up facts to show that the plaintiff was to collect from the abutting owners but show that the defendant was to collect, and then pay to plaintiff, in discharge of its liability to him, and not the liability of the abutting owners to plaintiff.

(6) Considering the contract and the record as a whole, and in connection with the parol evidence and the extrinsic matters set up by both the plaintiff and the defendant, it clearly appears that plaintiff had no contract or agreement with the abutting owners as to the work; that he was under no obligations to them, and they were under none to him, though the payment of the full amount due plaintiff by defendant is conditional, or postponed until the abutting owners pay to the county the amounts of their subscriptions.

What was said by this court in the case of *Crass v. Scruggs & Co.*, 115 Ala. 258, 22 South. 81, a case very much like this, is apt here: "When the words of a contract are ambiguous, of doubtful import, the construction given it by the parties in their mode of dealing under it, or by their mutual and concurring acts,

are aids, and sometimes conclusive in its judicial construction."—
115 Ala. 268, 22 South. 83.

"There is no doubt of the general rule that a contract must be read and interpreted as a whole; all its provisions and stipulations must be regarded; and it is the duty of the court to consider the relations of the parties, their connection with the subject-matter, and the circumstances under which it was made. And the construction must make the whole consistent, giving all the parts due weight.—*Pollard v. Maddox*, 28 Ala. 321; *Comer v. Bankhead*, 70 Ala. 136; *Mason v. Ala. Iron Co.*, 73 Ala. 270."— 115 Ala. 264, 265, 22 South. 82.

"Can it be reasonably supposed it was contemplated, that the plaintiffs would devote their time, labor, and means to the work they were bound to complete within a particular period without an absolute engagement from the defendant to pay them? There was no relation between the parties except that of employer and employees; and it is to this relation, defining the services the plaintiffs were to render, and the compensation for the services the defendant was to make, the first and second clauses of the contract are devoted. The clauses are in terms as absolute and unconditional as the subject-matter permits, and not more absolute and unconditional in respect to the one party than the other. The plaintiffs were bound to the performance of the work, without the expression of any condition dispensing with performance; and, without the expression of any condition, the defendant engaged to pay them a certain compensation."—115 Ala. 265, 22 South. 82.

(7) Pleas, merely setting up the breach of a special contract, are good answers to counts in special assumpsit as for breaches of that contract by the defendant; but they are not good as to common counts for work and labor done, account stated, etc., unless they go further, and show that such pleas are applicable, and are answers, to such common counts.—*Montgomery County v. Pruett*, 175 Ala. 391, 395, 57 South. 823.

There was no reversible error in allowing plaintiff to introduce his original claim against the county. If error it was to allow it when first offered, the error was subsequently cured by introducing the claim as recorded by the court, and the claim was shown to have been received by the commissioners' court and to have been acted upon by them.—*Talley v. Com'rs' Court*, 175

Ala. 644, 39 South. 167; *Mills v. Hudmon,* 175 Ala. 452, 57 South. 739.

There were used, in the resolution of the board of commissioners, terms which were of doubtful or ambiguous meaning; it was proper to offer evidence of matters, occurring between the parties, at the time of making the contract and in the course of its execution, which tended to show what was meant by the ambiguous phrases. This tended to explain, rather than to contradict, the writing.—9 Ency. Ev. 377; *Cassells Mills v. Strater Bros.,* 166 Ala. 274, 51 South. 969.

The rule is extended to written or documentary evidence in the form of minutes or resolutions of boards of revenue or commissioners' courts, and, in some cases, in the form of judicial records, if such evidence does not contradict the record.—*Smith v. State,* 62 Ala. 29; *Moseley v. Mastin,* 37 Ala. 216; *Thomason v. Odum,* 31 Ala. 108, 68 Am. Dec. 159; *Matthews v. Westborough,* 134 Mass. 555; *Riley v. Pettis County,* 96 Mo. 318, 9 S. W. 906; *Cromwell v. County of Sac,* 94 U. S. 351, 24 L. Ed. 195.

Much of the matter placed in the records of the board of commissioners was not proper matter of record, and as to such matter a different rule prevails.—10 Ency. Ev. 832, 941, 942; 17 Cyc. 580.

(8) The defendant itself offered, and the court admitted, evidence that plaintiff had accepted conditional warrants. It was therefore proper for plaintiff to rebut or explain this act of his by showing that they were issued to and accepted by him under his protest, and without his waiving his right to require other warrants to be issued, and to some extent this was shown to have been done.

(9) The warrants issued by the commissioners were admissible, to show the construction which the parties themselves placed upon the contract while it was being performed and was in force. While it is not a good or commendable practice for a party to introduce irrelevant or improper testimony and then withdraw it, yet if this is done in good faith, and it appears that no injury results therefrom, the withdrawal of such evidence will cure the error of introducing it. It is impossible to offer all the testimony at once, and hence it may for the first time during a trial appear that certain evidence theretofore introduced was improper or incompetent. If so, in such case it is not only the right, but it is the duty of the party introducing such evidence,

to withdraw it; but courts cannot be too careful, in the attempt to prevent the practice of letting the jury hear incompetent, irrelevant, and improper matter, and then later withdrawing such evidence. It is difficult to tell what may be the result of such a practice.

There was no error in the giving of any of the plaintiff's requested charges. The charges did not withdraw from the consideration of the jury any part of the evidence; while the plaintiff could not recover the 25 per cent. the payment of which was postponed until the property owners had paid in, and all may not have paid in, yet this, as we have shown, mas matter in abatement only, and not in bar, and there was no such plea in the record.

(10) There was no error in refusing any of defendant's requested charges. They were nearly all in effect the general affirmative charges as to all, or a part of the claim sued for, and it appears that these questions were all properly submitted to the jury.

(11) Charge 4 states a correct proposition of law, if the jury could have applied it to the evidence; but we are unable to find any evidence which would authorize the jury to find the facts hypothesized, and for this reason the charge was both misleading and abstract, to the extent that there was no evidence to authorize them to so find.

We are unable to find any error in the trial of this cause, which would warrant us in setting aside the judgment and awarding a new trial; hence the judgment must be affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.