# Phillipps *v.* Birmingham Industrial Co.

## *Accounting.*

(Decided June 17, 1909. 50 South. 77.)

1. *Accounting; Jurisdiction of Equity; Principal and Agent.*— Where the relation of principal and agent exist, the bare relation is insufficient to give equity jurisdiction to decree in accounting at the instance of either, but where the relation partakes of a fiduciary character and the matters about which an accounting is sought are peculiarly within the knowledge of the agent, a bill for accounting will lie.

2. *Same.*—Where the bill alleged that one party was in possession of the land and had croppers thereon engaged in cultivating crops, and certain other parts of the land worked by wage hands, and that

[Phillips v. Birmingham Industrial Co.]

complainant purchased of such party such lands and by an agreement between the parties subsequently made the vendor was to look after the gathering of the crop by the wage hands and sell the proceeds and turn the money over to the purchasers, and should also make settlement with the croppers, and deliver the proceeds to the purchaser, and the vendor disregarded the trust assumed and refused to render an account thereof, the details of which rested within his own knowledge, equity has jurisdiction to require an accounting, and a bill alleging such fact and praying for an accounting states a cause of action.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Birmingham Industrial Company against Lovick W. Phillips for an accounting. From a decree overruling demurrers to the bill, defendant appeals. Affirmed.

The facts made by the bill are (1) that the complainant, a corporation, purchased of respondent 850 acres of land in Russell county, Ala., and received a deed oc conveyance to the same; (2) that at the time of said purchase the said Phillips was in the possession of said land through and by his share croppers, who were engaged in the cultivation of miscellaneous crops, principally cotton, and that at that time the cultivation of the crops had attained to that stage at which little else was left to be done than to properly supervise the needed attention thereto and the gathering thereof; that the said respondent had a full corps of share croppers or supervisors or superintendents, and represented to complainant that, if it became known that the title to the lands had passed out of respondent, it would result in a demoralization of the share croppers and other employes of the said Phillips, and that it would be good policy to keep the transaction secret so far as these employes were concerned, and permit the maturing and gathering of the crop under the ostensible ownership of the respondent, as the relations between him and his employes were cordial, and they would take greater in-

terest in their duties if allowed to remain under the impression that their relation with their old employer continued without interruption; and, realizing the sound argument of said respondent in this behalf, complainant entered into an agreement set forth in the copy of an agreement in writing entered into between them, hereto attached and marked "Exhibit B," with reference thereto; (3) that the crops which were being grown and cultivated on the lands described (Exhibit A) were being cultivated under contract of hire by what are known as share croppers, under the terms of the contract with them; the said Phillips furnishing the lands, the teams, feed for the teams, and farming implements, and owner of the land to have one-half of the crop gathered, chargeable only with one-half of the guano used (here follows the names of the share croppers); and that as to all of these share croppers the said respondent was to make his own settlement with them as to what they owed him for advances made by him out of their own share of the crop, the remaining half of the crop being property of complainant, chargeable only with one-half of the guano used in making the crop, and said respondent was to look after the cultivation and gathering of the crop grown by the wage hands and turn over the proceeds of the crop so grown, chargeable with the wages payable to said wage hands, and in addition with the feed of said wage hands and the feed of the teams used by them only, no charge whatsoever to be made on account of the use of teams or for utensils, or for implements or machinery used in the cultivation of said crop; that as part of the agreement the said Phillips was to set apart and reserve, of the old cotton seed, sufficient to plant a ten-mule farm; and orator shows that not only has respond-

ent neglected his duty in this particular behalf, but orator charges that at the special instance of respondent all of the old cotton seed has been removed from said premises, and that he has done all in his power to thwart the efforts of complainant to put the said land in condition of cultivation during the current year; that he has instigated the former employes of respondent to assert claims to the premises not warranted by any contract made between complainant and them, and that he has taken an active part in preventing the assertion of the legal rights of complainant in the courts of the state whenever complainant attempted to assert those rights in the court; that complainant brought an action for the recovery of the old cotton seed, and that said respondent busied himself in person in the courts to obstruct the progress of the cause and nullify the efforts of the complainant to assert its legal rights; that he has intermeddled personally with every effort made by complainant to assert its legal rights and to exercise acts of ownership over said premises, either in the matter of the employment of labor, or in perfecting contracts or in trying to dispose of said land, having in every manner most flagrantly disregarded and defied the obligation of the trust assumed by him under said agreement, and has failed and refused to render an account of his stewardship, the details of which rest entirely within the knowledge of respondent, who can be made to give an account of the same only through this honorable court of equity. Then follows the prayer for an accounting, and a delivery of all the vouchers, receipts, and other documents belonging to complainant, together with a full, true, and particular account of all the money which has or ought to have been received by him, or any other person on his order or at his conniving, from any rents, incomes, or property arising from

said land, and for such other, further, and general re-
lief. The agreement is substantially as set out in the
bill. A plea was interposed to the bill, setting up that
the cause of action and every part of it arose in Rus-
sell and not in Jefferson county, and that respondent
lived at all times in Russell. The demurrers in various
ways take the point that the bill is without equity, be-
cause the complainant has an edequate remedy at law,
want of mutuality in account, want of entanglement or
complication in the account, and because the answers
of defendant to the allegations of the bill are not shown
to be essential to complainant to ascertain the true state
of the account between complainant and respondent.

W. T. STEWART, and W. K. TERRY, for appellant. In
order to sustain jurisdiction for the relief sought the
bill must allege that the facts are material; that their
discovery by the defendant is indispensable and that
complainant is not able to prove such facts by other tes-
timony.—*Dykes v. Parker,* 46 Ala. 616; *Dargan v. Hew-
lett,* 115 Ala. 510. No cause for injunction is alleged.—
16 A. & E. Ency of Law, 360, et seq. No ground for
an accounting is shown.—*Knotts v. Tarver,* 8 Ala. 743;
*Hulsey v. Walker County* 147 Ala. 501. The fiduciary
relation shown is not sufficient to give jurisdiction for
an accounting.—*Hall v. McKellar,* 46 South. 460; *Hul-
sey v. Walker County, supra.* On these authorities, the
court erred in overruling the demurrers to the bill.

A. LATADY, for appellee. No brief came to the Re-
porter.

SAYRE, J.—The equity of the bill is to be found in
its merits as a bill for an accounting. The bare rela-
tion of principal and agent will not give jurisdiction to
courts of equity to entertain a bill by the former against

33—161

the latter; but where the relation partakes of a fiducia-
ry character, and the matters of which an accounting
is sought are peculiarly within the knowledge of the
agent, a bill for an accounting will be entertained. In
*Halsted v. Rabb,* 8° Port. 63, the defendant had been
employed as clerk or agent to take charge of a mercan-
tile establishment of complaint, who at sundry times
furnished invoices of goods.   The defendant had not
fully accounted.   On bill filed, Goldthwaite, J., said:
"It would be difficult to conceive of a matter of account
cognizable in equity, if the facts stated in the bill will
not authorize the interference of a court of chancery
and support its jurisdiction."   In the case of *Hall v.
McKellar* (155 Ala. 508) 46 South. 460, it was shown in
the bill that the defendant, being an agent of the com-
plainant's mother, had managed her estate, consisting of
plantations, for several years, and at the time of her death
had taken possession of a large portion of her personal
property, and that complainant had no means of ascer-
taining how the account of the agency stood. Complainant
had made frequent demands for a statement of the ac-
count and delivery up of the property.   These facts were
held to show a fiduciary relation, and it was said:  "The
accounting by the agent is sufficient to give the court
jurisdiction."   That bill sought discovery also; but the
equity of the bill was unequivocally planted upon the
fiduciary character of the  relation between   the  com-
plainant and defendant.   And in *Enslen v. Allen,* 160
Ala. 529, 49 South. 430, it was held that an agency to
manage an estate created a fiduciary relation between
principal and agent.

In *Makepeace v. Rogers,* 11 Jur. (N. S.) 215, the
plaintiff had employed  the defendant  to manage his
landed estates. The vice Chancellor, overruling a demur-
rer, said:  "So far as I understand the law, I am un-
willing that there should be the slightest doubt cast up-

on it.   The bill is one by a landowner against a person
whom he says he has employed as agent and manager
of his estates, and who, he also   says,   has   received
moneys in the course of his acting while in that employ-
ment, and has not rendered proper accounts.   I con-
ceive that, wherever the relation between the person
who seeks an account and the person against whom he
seeks it partakes of a fiduciary character, a trust is re-
posed by the plaintiff in the defendant, and that the
trust is not the same as is represented to exist in the or-
dinary employment of an agent, such as a builder or
other tradesman.   The fiduciary character of the em-
ployment imposes upon the person employed the duty
of keeping accounts and of preserving vouchers; and
according to the old law, which I trust will continue
to be the law of this court, a bill for an account may be
filed and sustained."   On appeal that decree was affirm-
ed, it being noted that doubtless, if there had been an
account stated between the parties, or if the bill had
made no case of general agency, alleging only an isolat-
ed agency transaction, such, we note, as was the case in
*Knotts v. Tarver*, 8 Ala. 743, and *Crothers v. Lee*, 29
Ala. 337, it would have been necessary to show special
circumstances to induce the court of chancery to grant
relief.—4 De G., J. & S. 649.   In *Foley v. Hill*, 2 H. L.
C. 28, a bill was filed against a banker, and Lord Cot-
tenham, after pointing out the trust relation between
principal and factor, used this language:   "So it is with
regard to an agent dealing with any property.   He ob-
tains no interest himself in the subject-matter beyond
his remuneration.   He is dealing throughout for anoth-
er; and, though he is not a trustee according to the strict
technical meaning of the word, he is quasi a trustee for
that particular transaction for which he is engaged, and
therefore in these cases the courts of equity have assum-
ed jurisdiction."   The relation between banker and cus-

tomer was, however, distinguished, and held not to be fiduciary in its nature.

Mr. Pomeroy, in his work on Equity Jurisprudence, states as among the instances in which the legal remedies are held to be inadequate, and therefore, a suit in equity for an accounting proper, those cases where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account.—4 Eq. Jur. § 1421. And in the note, after stating that the mere relation of principal and agent, without more— the relation not being really fiduciary in its nature, and no obstacle intervening to a recovery at law—is insufficient to enable a principal to maintain the action against his agent, he adds: "But where the relation is such that a confidence is reposed by the principal in his agent, and the matters for which an accounting is sought are peculiarly within the knowledge of the latter, equity will assume jurisdiction"—and to this he cites a number of authorities, among them some of those which we have noticed. To the same effect are *Thornton v. Thornton,* 31 Grat. (Va.) 212; *Taylor v. Tompkins,* 2 Heisk. (Tenn.) 89.

*Dargin v. Hewlitt,* 115 Ala. 510, 22 South. 128 and *Hulsey v. Walker County,* 147 Ala. 501, 40 South. 311, relied on by the appellant, are to be distinguished from the case in hand. In both the reliance seems to have been on the complication of accounts and the necessity for a discovery. In both it was denied that there was difficulty in the accounting sought such as would confer jurisdiction. In the first-named case there was no intimation that a fiduciary relation existed between complainant and defendant; in the latter that inquiry was expressly pretermitted, though it seems also to have been held that the party whom the bill sought to hold to an accounting belonged to a class of public officers of whom it was said in *State v. Bradshaw,* 60 Ala. 239, that they

[Phillips v. Birmingham Industrial Co.]

hold public trusts, but their official trusts are not of the class which we are accustomed to characterize as private or personal trusts.

The question then is whether the bill in this case shows a fiduciary relation between complainant and defendant. Appellant (defendant), being the owner of a large tract of land in Russell county, which he was engaged in cultivating with a full corps of share croppers and wages hands, on June 12, 1907, sold and conveyed the same to the appellee. On June 15th, thereafter, the parties entered into an agreement concerning the completion of the work of making and gathering the crop for the then current year, which will be found in the statement of the facts to be made by the reporter. The bill alleges that the defendant, in flagrant disregard of the obligations of the trust assumed by him, had procured the removal from the premises of all of the old cotton seed, that he had done all in his power to thwart the efforts of complainant to put the land in cultivation during the year current at the time of the filing of the bill (June 20, 1908), and had failed and refused to render an account of his stewardship, the details of which rest entirely with the knowledge of the defendant. An accounting, and other relief, is prayed for, and a decree that defendant pay to complainant what should be found due, and the delivery up of vouchers, receipts, and other documents belonging to the complainant. On consideration of the facts averred, in connection with the principles of law announced, we hold that the decree of the chancery court, overruling the demurrer to the bill, was a proper decree.

Affirmed.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.