## Phillips v. Birmingham Industrial Co.

### Bill for An Accounting.

(Decided January 23, 1913. Rehearing denied February 14, 1913. 60 South. 896.)

1. *Equity; Pleas; Statute.*—Section 3115, Code 1907, is intended merely to change the rule in equity as to the effect of taking issue on an immaterial plea and does not change the effect of proving a good and sufficient plea.

2. *Principal and Agent; Accounting; Equity Jurisdiction.*—Where the equity of the bill is placed on the allegation of a fiduciary relationship between principal and agent and the failure and refusal of the agent to account, complainant can have no relief in a bill for an accounting, whatever respondent's liability at law may be; the respondent, the agent, setting up and showing that he reported and accounted fully as to his agency before the principal terminated the agency, and that thereafterwards he never dealt with or attempted to deal with complainant, or the subject matter of the lease.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Birmingham Industrial Company against Lovick W. Phillips for an accounting. Decree for complainant and respondent appeals. Reversed and remanded.

J. M. CHILTON and W. K. TERRY, for appellant. No brief reached the Reporter.

CALDWELL BRADSHAW, A. LATADY and ÉVANS & PARISH, for appellee. The bill has equity.—*Phillips v. Birmingham Ind. Co.*, 161 Ala. 509; 4 Pom., section 1421; 11 Juris. 215. Plea two does not go to the equity of the bill.—10 Ill. App. 203; 24 Wend. 203; 23 Pa. St. 23; 9 Iowa 599; 9 Gray 66.

MAYFIELD, J.—This suit is for an accounting. It was brought by a principal against his agent. This is the third appeal; the other appeals being reported in 161 Ala. 509, 50 South. 77, 135 Am. St. Rep. 156, and 172 Ala. 168, 55 South. 298. The first appeal sustained the equity of the bill. The second was a mandamus proceeding against the chancellor to compel him to set aside and annul certain interlocutory orders and decrees made by him. The application for mandamus was denied, and the cause proceeded to a final decree, which was in favor of complainant, and decreed the relief prayed, and ascertained and decreed the respondent to be due the complainant $2,957.74, with interest. A great number of exceptions were reversed to the register's report, and were overruled by the chancellor, and the register's report was affirmed; and from that final decree, the respondent prosecutes this appeal.

The respondent never answered the bill further than to file eight special and separate pleas, none of which were ever tested by being set down for hearing on their sufficiency; but the case was submitted, over the protest of respondent, on the bill, the pleas, and the evidence taken, and an accounting was ordered, had, and affirmed, as will appear from the report of the case in 172 Ala. 108, 55 South. 298. Some of these pleas were bad, and some not intelligible; but others were certainly good defenses and went to the equity of

the bill, while still others were good defenses pro tanto —this is, to a part of the bill.

Section 3115 of the Code provides that: "A defendant may incorporate all matters of defense in his answer, and is not required to plead specially in any case, but shall not take or have any advantage by pleading or proving an immaterial, irrelevant, insufficient, or untrue plea, and the complainant is not required to test the sufficiency of any such plea, or to move to strike it, and if his bill contains equity and is proved, he shall have the appropriate relief, notwithstanding any such special plea may have been pleaded and proved." This section, as last amended, was intended to change the rule, as decided in the case of *Tyson v. Decatur Land Co.*, 121 Ala. 418, 26 South. 507, that taking issue on an immaterial plea in chancery was attended with the same effect as in a court of law. The statute now provides in terms that the complainant is not required to test the sufficiency of the pleas, nor to move to strike them; but, if the bill contains equity and is proven, he shall have the appropriate relief, notwithstanding an immaterial plea may have been pleaded and proven. Of course, as the statute expressly declares, the bill must contain equity and must be proven to entitle the complainant to relief. The statute, of course, does not change the rule as to sufficient pleas, but only as to insufficient ones. If a good plea is interposed, whether separately or as a part of an answer, and it is proven, the complainant, of course, must fail now, as he always did, when a good and sufficient plea is interposed and proven.

The equity of the bill was sustained on the first appeal upon the ground that it alleged a fiduciary relation between the principal and the agent, and failure and refusal on the part of the agent to account. It is there

said: "The bill alleges that the defendant, in flagrant disregard of the obligations of the trust assumed by him, had procured the removal from the premises of all of the old cotton seed; that he had done all in his power to thwart the efforts of complainant to put the land in cultivation during the current year at the time of the filing of the bill (June 20, 1908), and had failed and refused to render an account of his stewardship, the details of which rest entirely within the knowledge of the defendant." Plea 2 was as follows: "That on the 21st day of November, 1907, the defendant furnished to complainant an itemized statement of the account between the parties, growing out of said contract relations, and since that time complainant had not requested any further accounting." Plea 4 was as follows: "The defendant for further plea says that on, to wit, the 7th of December, 1907, the defendant was notified by the complainant that Mr. and Mrs. B. F. Eborn, of Birmingham, Ala., had purchased and taken over all the crops grown on the 850 acres of land in Russell county, Ala., purchased from the defendant by the Birmingham Industrial Company by deed dated June 12, 1907, and that the Eborns had assumed all engagements relating thereto, and were entitled to all the benefits therefrom under existing agreements, and further that the said Eborns were placed in possession of said properties for utilization another year and for their own account; and defendant avers that all relations of principal and agent were thereby ended between complainant and defendant." Plea 8 was as follows: "For further plea, the defendant says that before the filing of the bill in this cause, and before the defendant had gathered the crops on said farm, the complainant gave the defendant the following notice in writing: 'You are notified that Mr. and Mrs. B. F. Eborn of this city

have purchased and taken over all the crops grown on the 850 acres of land in Russell county, Ala., purchased of you by deed dated January 12, 1907, and they have assumed all engagements relating thereto, and are entitled to all the benefits therefrom under existing agreements, and further they are placed in possesion of said properties for utilization another year and for their own account. The president of this company instructed Mr. Prince, the superintendent, to proceed to gather in the cotton and crops, and to hold it on the place for further orders. Further under no circumstances to allow anything to be taken off the place or marketed. You have taken the entire crops up to that time, gathered, marketed the same in plain violation of your contract with this company, and appropriated the proceeds to your own account, without authority. You have been called on and promised to give statement of account for advances which you have never done.' Defendant avers that said notice of transfer and assignment covered the demand for which an accounting is sought in the bill, and that, since notice was so given to defendant, the defendant had not, at any time prior to the filing of the bill, been requested to account with the complainant." These pleas went to the equity of the bill; and, if proven (and we find that they were), the complainant was not entitled to the relief prayed, nor to that decreed.

The pleas denied that the respondent had failed to give an accounting of his "stewardship," the main equity of the bill. They alleged that on a given date the agent rendered unto the principal an itemized statement of his "stewardship," and that, after that date, no further accounting had ever been requested, and that, soon after or just before the date of rendering the account, the principal, by employing another agent to do what the respondent had engaged to do, and instruct-

ing said other agent to receive and to obey no further instructions from the respondent, and selling the farm and the crops the subject of the stewardship, and placing the vendees in possession thereof, had rendered it impossible for the repondent to further carry out the agreement, the sole basis of the right to an accounting. The plaintiff may have had a right to an accounting up to the time it terminated the agency and the fiduciary relation; but the pleas and the proof show that it had an accounting up to that date, and that it had at hand, at that time, practically all the data it has been able to obtain by virtue of this suit.

After the complainant had thus rendered it impossible for the respondent to perform the agreement, and thus terminated the trust relation, it had no right, of course, to have him account as its agent and trustee. As it had voluntarily severed such relations, and the respondent, in consequence of such severance, was no longer dealing, or attempting to deal, with the complainant or the subject-matter, respondent was under no duty or obligation to further account; and we are at a loss to understand upon what theory the register and the chancellor held him liable to account for the crops gathered and disposed of after the whole matter was taken out of his hands and control by the complainant.

It is true that one witness testifies that the matter was never, in law or fact, taken out of his hands or control; that the respondent at all times had such management and control, and was therefore liable to account for the whole; but all the testimony of the other witnesses, and the undisputed facts, show that respondent was deposed of his stewardship, agency, and control by the complainant, through and by the very witness that testifies he was not so deposed, but was all the

while held liable, though he was not allowed to manage or control the affairs. Under this theory, the respondent was deprived of the right to manage or control the gathering and disposition of the crops, with which he was clothed, by the contract provision that: "The said L. W. Phillips is to proceed to look after and to finish the cultivation and gathering in of said crop in all respects as if it were his own."

The superintendent, Prince, who was the respondent's superintendent before and after the sale to complainant, was the man with whom the complainant displaced the respondent, and through whom it thereafter managed and controlled the further gathering of the crop, after November 21, 1907. This man Prince was a witness, and testified, in part, as follows, as to this matter: "On or about the 20th or 21st of November, 1907, I received verbal instructions from Mr. Bradshaw at Seale not to receive any further instructions from Dr. Phillips, that he and Mr. Eborn would take the farms in charge, and would furnish the money to pay the cotton pickers and the gathering of the crops. After the 22d day of November, 1907, I did not recognize Dr. Phillips as having any control over the place. Dr. Phillips did not, after that time, come to the farm any more. A day or two after Mr. Bradshaw gave these instructions, I informed Dr. Phillips of said instructions." Soon after this conversation, the complainant, through its president, Bradshaw, wrote Prince as follows "Referring to our conversation subject of gathering in of crops for 1907, as we will not be able to get out on account of bad weather to-day, I write to confirm my verbal instructions as to that part of the farm owned by the Birmingham Industrial Company, viz.: All in sections 5 and 6, and in sections 8, 9, 17, and 20 east of Blanchard's east of Horse Lot creek, and say

that, as to all crops grown on this place for this year, you are authorized and instructed to proceed and gather the crop, and especially pick the cotton as fast as you can find hands to pick it at 40c per 100, keeping account and weight of the same, and I will see to it personally that parties doing the work are paid promptly in full, without deductions or discounts," etc.

On December 4, 1907, the complainant, through its president, Bradshaw, wrote Prince as follows: "I write you in reference to the 850 acres of land in Russell county, Ala., and which is all the lands purchased by the Birmingham Industrial Company from Dr. L. W. Phillips and wife, by deed dated June 12, 1907, and the bill of sale and agreement between said parties as to crop grown on the property for year 1907, has been taken over by and transferred to Mr. B. F. Eborn and Mrs. Corine C. Eborn of this city, who now succeed to all the rights acquired and held by the Birmingham Industrial Company, in every respect, and they are to assume and carry out all engagements with tenants and others for services, share crops, and advances, and make full settlements for the year 1907, and further to make such rentals, contracts, and agreements for the cultivation of said property or the dispositions thereof for year 1908, as to them may seem meet and proper, and you are notified that they are put into possession and absolute control thereof for said purposes and for their own account." On this same date Bradshaw wrote a similar letter to the respondent and to the merchants who were furnishing the tenants and hands with supplies.

It is difficult to see why this was not a termination of all trust relations existing between the complainant and the respondent. All this was confessedly done by the complainant, without the knowledge or consent of

the respondent, Phillips. It is true that in subsequent letters Bradshaw says that the trade with Eborn might not go through, and that it did not go through; but the respondent was not responsible for, and was not a party to, any of these matters, yet he is made an insurer of the complainant against all loss before and after he was discharged. It is further true that Bradshaw testifies he never was discharged nor relieved of his duties or liabilities as complainant's agent; but all of the other testimony, and the undisputed facts, are to the contrary. Bradshaw's testimony would shear him of all authority and rights in the matter, yet impose upon him all the duties and liabilities of said agency. This cannot be done in a court of law or of equity. One party to a contract cannot deprive the other of all his rights and privileges under the engagement, yet still hold him to the duties and liabilities imposed thereby. The respondent, Phillips, certainly ought not to be held liable for failure of the sale of the crops and land to Eborn, nor for the defaults of Prince, after he had been substituted for the respondent.

Bradshaw, on December 7, 1907, writes Prince (not Phillips) as follows: "I wrote you on the 4th, under emergency, as to transfer of Birmingham Industrial Company interest to Mr. Eborn, and you will understand that his and my instructions as to gathering in of the crop is to be carried out to the letter. It may yet turn out that we shall not complete the trade, but that does not matter for present purposes; if it fails, I will advise you. In the meantime you must remember that until January 1st you are employed by the two places jointly, and should make your attention to apply equally as well to one as the other in getting the cotton out," etc.

On the 10th of December, 1907, Bradshaw writes Prince again: "On the 4th inst., we wrote you that the Eborns had taken over the entire crop interest of the Birmingham Industrial Company for year 1907, on the 850 acres held under contract with Dr. L. W. Phillips, and I now write to notify you that the trade with the Eborns in this matter is entirely off, and you are now notified that said Eborns have not accepted any of said interests, and further that said company's interests and ownership in said rents remain as fixed by its contract with Dr. Phillips, a copy of which you have." Phillips certainly ought not to be held liable for this matter, with which he had nothing to do, and could not have prevented; yet the register and the chancellor make him liable for all the crops gathered and disposed of after, as well as before, this date.

On December 18, 1907, Eborn wrote Prince as follows: "Col. Bradshaw and myself have come to another deal. He has sold me the 400 acres east of the Horse Lot creek, and lying east of and south of the Blanchard tract. He has also sold to me all of the cotton seed that would belong to him from his present crop, all of the hay, all of the corn, and all of his interest in this crop. You will please take charge of it for me and care for same; all of the seed from his one-half of the cotton on his part, also the hay and corn. I have taken an option from him on the balance of his place, and have rented the balance of his place from him for the coming year, with the privilege of buying it, should you and I see proper to do so. You will please also understand that all of the cotton seed advanced on the entire plantation were advanced from the seed that was sold to me by Dr. Phillips, and that all seed that would or should have been returned by

the hands, instead of being delivered to Dr. Phillips, belongs to us."

As before stated, the respondent, Phillips, certainly ought not to be held liable as an agent, after he was thus deposed; and the record before us shows that he had reported and accounted fully as to his agency before he was deposed, or before he was notified or was aware of his removal as agent for the complainant. While we do not decide that the respondent is not liable to the complainant at law, as to the matters involved in this litigation, we do decide that he was not liable to account in this action, under this bill, these pleas, and the proof found in this record. The equity of the bill was not proven, but was disproved, and the pleas before set out and referred to were proven, which, of course, prevents any recovery or any relief in this suit, which is a bill for accounting.

It therefore follows that the decree appealed from must be reversed, and one here rendered, dismissing the complainant's bill, but without prejudice as to any proper and timely action which may be hereafter brought as to the subject-matter in litigation. We do not, however, intimate that the respondent is liable in any amount, or in any action, but mean to make it clear that we do not and cannot now pass upon that question.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.