No. 3.—WILLIAM WELLS, and others, plaintiffs in error, *vs.* C. B. STRANGE, defendant.

[1.] A bill filed for a general account and settlement of a copartnership, may embrace every object necessary to the complete adjustment of the concern, without being demurrable for multifariousness.

[2.] It is not now necessary that a bill for an account should contain an offer by the complainant, to pay the balance, if found against him.

[3.] All persons interested in the decree to be rendered, should be made parties to the bill, that the Court may do complete justice, and that future litigation may be prevented.

In Equity in Marion Superior Court.   Demurrer.   Decided by Judge ALEXANDER, May Term, 1848.

This was a bill brought in the Superior Court of Marion county, by the defendant in error against the plaintiffs in error, for an account of and concerning the village Hall built in the town of Tazewell, under articles of agreement and co-partnership in writing, and seeks—

1st. A general settlement and account.

2d. The perpetual injunction of a certain cause of ejectment, wherein judgment had been recovered against the defendant in error, while in the possession of the Hall as the treasurer, agent and tenant of the company, so far as to restrain the collection of the *fi. fa.* founded on the judgment for " *mesne profits* ;" the possession having been abandoned by him, till he can have an account.

3d. For specific performance of a part of the said partnership agreement, to wit : the payment up of the balance of the stock due and unpaid by certain of the stockholders, and the conveyance of the title alleged to have been fraudulently obtained by one of the company, Wm. Wells, or that he be considered as holding the same as *trustee for the benefit of the company.*

At the first term of the said Superior Court, the plaintiffs in error, by their solicitors, moved their general demurrer ; specifying, however, certain grounds as more especially relied on, viz :

1st. That the complainant is *too late in asking equitable relief after a judgment at Law.*

Wells and others *vs.* Strange.

2d. Because said bill is *multifarious*.

3d. Because of *want of proper parties*; two of the stockholders not being made parties.

4th. Because said complainant does not *offer to do equity in said bill.*

5th. Because it is no where alleged in said bill, that the parties are *insolvent,* or that an *irreparable injury will accrue by the collection of said fi. fa.*

The facts are more fully stated in the opinion of the Court.

WORRILL & HILL, for plaintiffs in error.

This bill is multifarious, because it is for a specific performance, in which all the defendants should of right be complainants, except the Wilchers and Wells; and because it is for an account of partnership dealings, in which two of the Wilchers have no interest. In the one case, Wilcher and others are taxed with delay and costs, in relation to a matter in which they have no interest; and in the other, defendants are deprived of their right of being complainants and properly conducting their case. *Story Eq. Pl.* 224, 225, 226, 227, 228—*from section* 271 *to section* 277, *inclusive.* 2 *Kelly,* 419.

2d. A want of proper parties. It is true the bill states that the company let them off, but the bill does not allege their assent. They have a right to be heard.

3d. Strange admits that he owes the rent, and admits that Wells has paid for the premises, and does not offer to pay the one or to allow the other. He who asks equity, must do equity. 1 *Story Eq.* 77. *Story Eq. Pl.* 404.

4th. Under the above stated facts, complainant asks an injunction, without stating a solitary reason for it, neither the insolvency or irresponsibility of the defendant Wells. 2 *Story's Eq.* 661.

JONES, BENNING & JONES, for the defendant.

1st. The bill was not multifarious. The land *belonged* in equity to the partnership, because Jourdan Wilcher, Sen. having the title, stood by and saw his son or sons (twin) sell it to the company, and did not disavow their acts. 1 *Story Eq.* §385. *Fonb. Eq,* 138-9

And Wells bought from Wilcher, with *notice* of this equitable ti-
tle. Moreover, being himself a partner, he could not, "privately
and behind the backs" of his co-partners, buy what the partner-
ship had itself agreed it should buy and own; such a fraud would
only make him hold in trust for the company. *Stor. Part.* § 174,
*and note* 5. *Featherstonhaugh vs. Fenwick,* 17 *Ves.* 311. And in-
asmuch as the *mesne* profits, *incidents* of the land, which equally
belonged to the partnership, were still in its hands by its agent or
tenant. Strange, it was proper that they should there remain, not-
withstanding Wells's judgment for them, to prevent circuity of
suit, and for other reasons.

Now, the bill being for an account of the partnership, it was
no more multifarious for asking for an account of *one* item of
partnership property, than *another.*

2d. The complainant is not too late in calling for equitable aid,
after the judgment at Law.

"If it be doubtful whether a Court of Law can take cogni-
zance of the defence, and there exists no doubt of the jurisdic-
tion of a Court of Equity, and if in such a case a defendant at Law
under the influence of such doubt, omit to make his defence, or
if he bring it forward and it be overruled, under the idea that it
is not a defence at Law, it is not granting a new trial, for a Court
of Equity to afford relief notwithstanding the trial at law." *King
vs. Baldwin,* 17 *Johns.* 389. *Marine Ins. Co. vs. Hogeson,* 7 *Cr.* 336.
*Bateman vs. Willoe,* 1 *Sch. and Lef.* 206. *Farquharson vs. Pilch-
er,* 2 *Russ.* 81. 3 *Danls. Ch. P.* 305, 6. 2 *Sto. Eq.* § 887, § 882.

3d. The bill having stated that Jno. Wilcher and Thos. J. Ste-
vens were among other "stockholders," prayed subpoena against
"the said several stockholders;" therefore, Jno. Wilcher and
Thos. J. Stevens, *are* parties; but if not, they have no interest,
having been let off from their subscriptions.

4th. In a bill for an account, an *offer to do equity* is not neces-
sary. 1 *Dan. Ch. Pr.* 497, 68. *Colombian Gont vs. Rothschild,*
1 *Sim.* 94, 105. But there is no equity for Strange to offer to
do.

5th. *Irreparable* mischief is not a condition precedent to the
*right* of enjoining by Courts of Equity. 3 *Dan.* *C. Pr.* 305–7.
2 *Story Eq.* §§ 94, 310, 946, 901. *Drury Inj.* 3, 206, 210,
218, *et seq.* 2 *Sim.* 515. 7 *Ves.* 413. *Butler and others vs.
Durham,* 2 *Kelly,* 420.

Wells and others *vs.* Strange.

G. E. THOMAS, for defendants.

It is not too late in a case like this, to interfere, even after a verdict at Law, because—

1st. The defence could not have been made at Law, being one peculiar to this Court; and may as well be made *now* in this Court, as *before* verdict at Common Law.

2d. Because it will prevent *multiplicity of suits*, and is one of those cases where the rights of the parties can better be determined here, than in a Court of Law. *See Jeremy's Equity Jurisdiction*, 343, 491. 2 *Pr. Wms.* 425.

The bill is not *multifarious*, for it brings *no one before the Court* but such as are *interested*, and seeks to involve in the issue, *no fact* which is foreign from the object of the bill, viz: the winding up and settling of this co-partnership. A Court of Equity will *prevent* an improper act, or *compel* the performance of a proper one. *Eden on Injunc. and note* 343. 1 *Pr. Wms.* 713. 1 *Atk.* 572.

It is not *multifarious*, as to the *allegation against the conduct of Wells and Wilcher combining to recover a verdict of mesne profits in the name of Jordan Wilcher, Sen.* when in fact, the case was instituted and conducted by, and inures to the benefit of William Wells, one of the company.

It is not *multifarious*, as to the relief sought in compelling said Wells, who must be, and ought to be regarded, as *trustee for the company* to withhold the collection of said judgment and execution, as the same must be considered as the assets of the company, being *the profits or rents of the hall*, till all these matters of indebtedness are adjusted.

" A bill is only *multifarious*, when it contains *separate* and *distinct* matters alleged by *one* plaintiff against the *same* defendant, or by the *same* plaintiff against *several* defendants, *requiring distinct relief*; or by *several* plaintiffs against *one* defendant, *requiring separate* relief against him." *See* 2 *Kelly R.* 419. *Jer. Eq. Jur.* 426. 449.

In this case it is charged, that *with a perfect knowledge of the fact of John Wilcher having pledged this lot to the company, old man Jordan Wilcher, Sen. stands by and sees the hall erected on it, before he makes any objection, or sets up any title, and that he was also privy to the giving of the said bond by the said Jno. M. Wil-*

cher, to the company, and made not the slightest objection till the house was completed. *Jeremy's Eq. Jur.* 388, 389. 1 *Story's Eq.* 376, 377.

4th. *All proper parties* are before the Court. If stockholders, they are parties; if not, they have no interest whatever.

6th. The complainant does offer all the equity good conscience requires him to offer. He is willing to pay all that is due, and insists upon the same rule of justice and equity on final account and settlement; but according to the settlement contained in the bill, which the demurrer admits to be true, the company are largely indebted to him, and Wells represents with himself almost the entire Company, at the present time.

7th. Nor is it necessary in a case like this, that there should be any allegation of the *insolvency* of the parties to the said *fi. fa.* and therefore, an *irreparable* injury must ensue. We place this on the ground of its being assets and partnership funds, to which Wells and Wilcher have no just claim in Equity, and they in a Court of Law will reap the reward of their iniquity, to wit: the amount of said verdict, if not here arrested in this Court.

8th. A demurrer will lie whereever it *is clear*, that taking the charges in the bill to be true, the bill would be discharged at the hearing; but it must be founded on this, that it is an *absolute, certain and clear* proposition that it would be so. 1 *Daniel's Ch. Pr.* 599.

*By the Court.*—LUMPKIN, J. delivering the opinion.

In 1843, a partnership was formed by and between sundry persons, to build a tavern, to be called Village Hall, in the town of Tazewell and county of Macon in this State. In the articles of agreement, the amount of stock subscribed by each partner, as well as the mode of payment are designated, viz: whether in property, money or labor. Among the rest, one John Wilcher took two shares estimated at $200, to be paid for in three town lots, the numbers of which were unknown at the time, but were afterwards ascertained to be 1, 4 and 25. The Company was organized by the election of officers, Charner B. Strange, one of the stockholders, was appointed Secretary and Treasurer, and seems to have acted in all things as the general agent of the concern.

The hotel was erected on one of the lots, subscribed by John Wilcher, and taken possession of by Strange, as the tenant of the Company. Strange has now filed his bill setting forth the foregoing facts, and stating, among other things, that he has paid out for the Company some five hundred dollars more than he has collected. That a large portion of the stock is yet unpaid. That an ejectment has been successfully prosecuted against him by one Jordan Wilcher, Senior, for the tavern property, and a recovery had, not only for the premises, but for three hundred dollars for mesne profits. He prays a settlement and account of the partnership matters; and that in the meantime, he may be protected by process of injunction, against the payment of this judgment. He further alleges, that, notwithstanding the legal title to the tavern property was in Jordan Wilcher, Senior, the equitable estate was in the Company. That the father had either by gift or sale, conveyed the lots to his son, and he avers, in support of this, that he was privy, in the first instance, to the fact that his son had subscribed three lots, as stock, and that he did not object; that he stood by and witnessed the construction of all the improvements, and never interposed any claim; that he was knowing to a certain contract, which was made by the Company with his sons John and Jordan Wilcher, Junior, by which they obligated themselves to execute titles to this property, and that he acquiesced in the arrangement. That after all this, he had sold the lots to one William Wells, one of the tavern Company, for $200, and had fraudulently combined with said Wells and his sons, to dispossess him, Strange. The bill farther charges, that Jordan Wilcher, Senior, agreed to make titles to the Company, provided they would pay him the $200, agreed to be given to his sons, on account of some supposed joint interest which they were supposed to have in the lots; but that the money had been tendered him and refused.

At the appearance term of the bill, a demurrer was filed on various grounds—

1st. Because the complainant came too late to invoke equitable relief against the judgment at Law.

2d. The bill was multifarious.

3d. For want of proper parties.

4th. Complainant does not offer to do equity.

5th. The bill does not allege that Wells and Jordan Wilcher,

Senior, are insolvent, and that irreparable loss would result to the complainant, provided the injunction is refused.

The Court below overruled the demurrer, and we think rightly, on all the grounds, except as to the parties.

[1.] The object of the bill is one, viz: the adjustment of the partnership ; and every thing in it, not only tends to that end, but is indispensable to its accomplishment. The titles to the disputed lots, must be settled before the partnership can be closed. And we apprehend, that the doctrine of " irreparable loss," and " coming too late after a judgment has been rendered at Law," have no application in the present case. It is not proposed to disturb the recovery for *mesne profits ;* on the contrary, it has fixed the amount of complainant's liability for the use and occupation of the premises. If, however, it should turn out upon the hearing, that this rent belongs to the Company, and such, unquestionably, is the case made by the bill, in that event it will save a circuity of actions, to suspend its collection until a decree can be had. And if the title to the property should be adjudged to the Company, this fund should enter into the account and settlement of the partnership. If it should turn out that this judgment has been recovered in the name of Jordan Wilcher, Senior, for the use of Wells, who is a debtor to the concern, it would be unreasonable and useless to allow the payment to be coerced, when the money must eventually be refunded. *Frustra petis quod statim alteri reddere cogeris,* is the maxim of common sense, as well as of common justice.

[2.] But it objected that the complainant in the bill does not offer to do equity. This identical point was made in the case of the *Columbian Government vs. Rothschild,* 1 *Simm.* 94. The *Attorney General* and Mr. *Pemberton,* for the demurrer, argued that the bill should be dismissed, inasmuch as the complainant did not submit, as every accounting party ought to do, to pay the balance, if any should be found due from him on taking the account. Mr. *Sugden,* Mr. *Pepys* and Mr. *R. Grant,* in reply, insisted that the mere filing of a bill for an account, enables the Court to do all justice between the parties. The Vice-Chancellor, said " That the Court had originally required that a bill for an account, should contain an offer, on the part of the plaintiff, to pay the balance, if found against him ; but that was not now considered necessary."

[3.] We are quite clear, however, that Thomas J. Stephens and John Wilcher, two of the original stockholders, should have been

parties, especially the latter, who subscribed, as stock, the lots in litigation. He is charged as being in confederacy with his father and Wells, to defraud the Company out of the titles to his property. Besides, he and his brother Jordan were, by agreement, to receive $200, upon titles being made, and this, among other things, is prayed to be done.

It is true, the bill states, that both Stephens and Wilcher were released, as stockholders, by a resolution of the board of directors. But it does not appear that the release was ever accepted. And if there should be a surplus to be divided, instead of a deficiency to be contributed, they might desire to share their portion of the profits. We see no other error in the record, and on this ground only, *reverse* the judgment.