# Birmingham Water Works Co. *v.* Windham.

## *Mandatory Injunction.*

(Decided December 17, 1914.   67 South. 424.)

1. *Contracts; Construction.*—A contract which is plain and unambiguous is not open to construction.

2. *Same; Intention of Parties.*—In construing a contract the courts must consider it as a whole and seek to ascertain the intention of the parties, and may assume at least prima facie that the parties made a reasonable and rational contract.

3. *Same.*—Where a contract is ambiguous, the ascertainment of the true intent of the parties may be aided by the interpretation they have given the contract.

4. *Waters and Watercourses; Public Service Corporation; Ordinances.*—The ordinance examined and held to give the water works company the right to install meters on any service pipe, and collect meter rates and rent.

APPEAL from Birmingham City Court.

Heard before Hon. J. H. MILLER.

Bill by T. C. Windham against the Birmingham Water Works Company to restrain said company from cutting off water from complainant's house, and for a mandatory injunction to require the said company to accept a sum certain for water services for a certain period. From a decree granting the relief prayed for, respondents appeal. Reversed and rendered.

PERCY, BENNERS & BURR, for appellant.

WHITTAKER & NESBITT, for appellee.

McCLELLAN, J.—The rights and obligations of the parties to this cause and the correctness of the decretal order granting an injunction pendente lite restraining appellant from cutting off or discontinuing water service at the residence of the appellee depend upon the proper construction of the ordinance-contract entered into by the city council of Graymont and the appellant on the 25th day of October, 1908. In the decision of the Court of Appeals delivered in the cause styled *Birmingham Water Works Co. v. Kelley*, 2 Ala. App. 629, 56 South. 838, will be found set out the schedule of flat rates and the schedule of meter rates, with other related provisions of their ordinance-contract. It is not thought necessary to republish, in extenso, those schedules. Reference to that report must suffice in that respect.

Section 13, so far as it need be here reproduced, is: "That, as a further inducement unto grantee to construct said waterworks system and operate the same, said city agrees that grantee shall have the right for and during the full term and continuance of this ordinance to charge all persons and corporations using water from its mains at the following rates, which shall be collected quarterly in advance, except in cases where meters are used, in which cases charges may be collected quarterly or monthly, at the option of the grantee, and, in consideration of the foregoing, grantee does bind itself to furnish, during such term, water unto all consumers in said city having connections with its mains at such rates."

Section 14 of the ordinance-contract is in these words: "That grantee shall have the right to set a meter on any service line, whether it be used for domestic or any other purpose and notwithstanding a specific or annual rate may be named therefor herein, and charge for use of water according to the meter schedule provided in this ordinance, and any water consumer shall have the right to require grantee to set a meter on his service pipe and to pay for water service by meter measurement, provided that each and every water consumer supplied by meter measurement, shall pay a minimum monthly charge for water privilege of at least one ($1.00) dollar, or a minimum quarterly charge for water privileges of at least three ($3.00) dollars, in cases where a one-half inch or five- eighths inch meter is used, except that in no event shall the minimum monthly or minimum quarterly charge for water privilege exceed the flat rate charge for the same period."

The schedules of flat and meter rates appear in section 13 of the ordinance-contract; and in that section, following the schedules, it is provided: "The rates pro vided for in this section are subject to the modifications and provisions of sections fourteenth, fifteenth, sixteenth and eighteenth."

The only specific reference in the meter schedule to as small a quantity of water as 1,000 gallons is in these words and figures in the first line of the schedule: "For a daily consumption of 1,000 gallons $.30 per 1,000 gals." Under the capital heading "Meter Rates," and, in parenthesis, preceding the expression just quoted, these words appear: "Subject to the minimum charges and meter rates hereinafter provided for."

(1-3) The question propounded on this appeal is whether a residential consumer, whose service pipe is of the three-quarter inch class, and who uses less than

1,000 gallons of water a day, may be required to pay for water he consumes as measured by a meter; such consumer having for many years used the water furnished by the company (appellant) and having paid therefor during that time according to the measure thereof made by a meter installed by the mutual agreement of appellee and appellant, pursuant to what they conceived to be the rights established by section 14 (quoted above) of the ordinance-contract.

It will be noted that the quoted first line of the meter schedule appears to only contemplate a daily consumption of exactly 1,000 gallons; no more and no less. If this line of the schedule were considered alone, it would be readily conceded that the rate of 30 cents per 1,000 would and could only apply to a daily user of that exact quantity of water. When the meter schedule's succeeding ascending gradations of quantity consumed each day, viz., chiefly 500 gallons and 1,000 gallons, are considered, and the obvious fact that rarely, if ever, may there be a connectedly recurrent daily consumption of exactly 1,000 gallons of water is given its due attention, credulity is taxed to accept the words of the first line of the meter schedule as meaning what it seems to say and to accord to it, in consequence, so nearly an impossible field of operation. Our opinion is that the contract in this respect is open to construction—a condition that could not obtain if the words of the contract were plain and unambiguous. Contracting parties usually engage upon rational considerations and to reasonable effects and ends; and, when the courts find it necessary to construe instruments of obligation, it is ever proper, and often essential, for them to assume, at least prima facie, that the unreasonable and irrational was not the contractual intent. The whole instrument must be considered, and out of this will and must

come the intelligent judgment of what was the intention of the parties.

From the quoted parts of section 13, it appears with certainty that the company was assured the right to charge all persons and corporations using water from its mains at the rates thereinafter set out in the instrument. It is clear that the common purpose was to fix rates of charge for all consumers in the territory described in the instrument. There is no mistaking this feature of the contractual intent. By section 14 the company was assured the right "to set a meter on any service line," regardless of the character of the user, and "notwithstanding a specific or annual rate may be named therefor herein," and to charge for the use of the water according to the meter schedule set out in the ordinance-contract. That section then declared the broad right in "any water consumer" to require the company to set a meter on his service pipe and exacted that he pay therefor "by meter measurement." The last three words we have quoted must of necessity refer to the meter schedule in the ordinance-contract. It cannot be supposed that a right so broadly declared and evidently regarded as of value and consequence to the whole class of consumers would be predicated of any other method or scheme of "meter measurement" than that stipulated in the ordinance-contract. So the provision for this right vested in any consumer, and the further stipulation that payment for the water used shall be by measurement must be read as appropriating to the completed expression intended the meter schedule laid out in the instrument.

This status of pertinent schedule provision and of unlimited declaration of right in both company and any consumer to install or to have installed meters and to exact payment according to measure presents this dual-

[Birmingham Water Works Co. v. Windham.]

formed question: Was it the contractual intent that the language of the schedule, whereby only a daily consumption of 1,000 or more gallons allows the purchase of water by measure, should qualify the broadly stated rights of seller and consumer as set forth in section 14 of the contract and limit those rights to enjoyment or employment by, or with reference to, those only who daily use 1,000 gallons or more; or, was it the common intent that the pertinent provision of the schedule should accord with the unrestricted rights set out in section 14 to install meters or to require the installation of meters and the sale and purchase of water on a measuring basis?

Our opinion is that an affirmative response to the latter branch of the question just stated, and a negative response to the former branch of that question, will express the only conclusion that could be fairly, reasonably deduced. Surely, if the unrestrictedly provided rights to install, and to require installation of, meters on service pipes, was intended to be alone available in cases where the daily consumption was 1,000 gallons or more, so carefully drawn an ordinance-contract would not have committed the qualification of the unlimited provisions in this regard to the mere fact that no item of the schedule was laid out for consumers of a less quantity than 1,000 gallons of water a day. Silence is not the usual way by which, under such circumstances, it is to be reasonably expected contractors will qualify or intend to qualify major rights and obligations established in their instruments. Rather, it must be concluded, under the circumstances here disclosed, that they intended no qualifications, but that in reducing to writing their purposes some words were employed, or some words were omitted, that did not conform to the true expression of the contractual intent.

"Words may be supplied, or may be rejected, when necessary to carry into effect the reasonable intention of the parties."—a process that is allowable when there appears "contradiction, ambiguity, or uncertainty in the terms of the instrument."—*Boykin v. Bank*, 72 Ala. 262, 270 (47 Am. Rep. 408).

So, it must be held, in accordance with the intent drawn from a consideration of the whole instrument, that the first line of the meter schedule was intended to provide a meter rate up to and including 1,000 gallons of daily consumption, subject to the minimum monthly or quarterly charge provided for in section 14.

(4) That the stated construction of the ordinance-contract is correct and accords with the intent of the parties is clearly confirmed by the fact shown by this record, that from the beginning consumers and the company actually acted upon the theory that the right to install meters on service pipes and the right of con sumers to require the installation of meters on their service pipes, and thereby and thereupon operating to put into effect the obligation to pay by measurement for water used was not limited to those consumers whose daily consumption of water was 1,000 gallons or more. Where, as here, a contract is ambiguous, or contradictory in some of its terms, the ascertainment of the true intent of the parties may be greatly aided by the interpretation the acts of the parties have given the contract.—*Crass v. Scruggs*, 115 Ala. 258, 268, 28 South. 81; *Comer v. Bankhead*, 70 Ala. 136, 141.

Under the provisions of section 15 of the ordinance-contract, the complainant (appellee) was obligated to pay meter rent of forty (40) cents per month.

The decision of the court in *Smith v. B'ham Water Co,.* 104 Ala. 315, 16 South. 123, is not an authority on the question here determined. The decision in *B'ham*

*Water Co. v. Keiley,* 2 Ala. App. 629, 56 South. 838, is not in accord with the views of this court on the like question.

The company having, as we construe the Graymont ordinance-contract, the right to install meters on any service pipe and to charge by measure for water consumed and to collect meter rent under section 15 of the contract, the decretal order undertaking the restaint of the company from the severing of the complainant's water connection to his residence was laid in error and is reversed; and a decree will be here entered dissolving the temporary injunction for want of equity in the bill.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.