(87 South. 186)

GRAND BAY LAND CO. v. SIMPSON.
(I Div. 157.)

(Supreme Court of Alabama. Dec. 16, 1920.
Rehearing Denied Feb. 12, 1921.)

1. Corporations ⬅308(2) — Sales manager and subagent held required to account for commissions earned in competitive business.

Where a sales manager or "broker" for a land company was to receive commissions on sales of employer's lands and also on sales of property listed with the employer, such sales manager and his subagent must be treated as acting for the employer in the sale of lands listed with the employer, and in an action for an accounting the employer should be credited with the commissions earned by the sales manager and his subagent in competition with the employer in the sale of the employer's listed lands.

2. Account ⬅17(I, 3)—Mere filing of bill implies items on both sides.

The mere filing of a bill for accounting implies that there are items on both sides, that the balance is uncertain, and that the true amount and to whom due must be ascertained by the court, and implies an offer on complainant's part to pay any balance that might be found owing to the defendant without a specific averment of an offer to that effect, and the defendant need not file a cross-bill to be allowed his credits or to obtain a decree for a sale in his favor if his credits exceed the claims of the complainant.

3. Account ⬅17(I)—Offer to do equity implied in every bill for accounting.

An offer to do equity is essential and implied in every bill for accounting in a court of chancery.

4. Brokers ⬅40—Contract held not to provide only for sale of unimproved lands, and not orchards.

In an action by a sales manager or broker for an accounting for commissions, insistence of complainant that contract only provided for a sale of unimproved lands, and not orchards, held untenable.

5. Customs and usages ⬅10—Purpose of custom to ascertain intent of parties to contract.

The only purpose of a custom is to ascertain the intent of the parties to a contract, and, when that intent is made clear by its terms and the mutual construction of the contract itself by the parties thereto within the terms of the contract, it will prevail over an intent that may be presumed from previous dealings of the parties with reference to another contract.

6. Brokers ⬅41—Entitled to commissions on sales ratified by vendor.

Where sales manager or "broker" sold land for a corporation, and the services and sales were approved or ratified by the corporation, and part payment made for the services so rendered and accepted, broker was entitled to payment of the balance of the commissions whether the sales were made under an existing contract or independent thereof.

7. Brokers ⬅86(I)—Evidence held to show person selling land was subagent and complainant entitled to commissions on such sales.

In an action for an accounting by a sales manager or broker for a land company, evidence held to show that a person employed by complainant was the subagent, and not an employé, of the land company, and that complainant was entitled to commissions on lands sold by such subagent.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Bill by J. M. Simpson against the Grand Bay Land Company. Judgment for complainant, and respondent appeals. Affirmed in part, and in part reversed and remanded.

Harry T. Smith & Caffey, of Mobile, for appellant.

The complainant forfeited all right to commissions by acting in bad faith. 88 Ala. 640, 7 South. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81; 142 Ala. 528, 39 South. 229; 151 Ala. 249, 44 South. 203; 107 Ala. 331, 18 South. 277; 70 Ala. 318; 94 Ala. 608, 10 South. 209; 103 Ala. 394, 15 South. 956; 141 Ala. 504, 38 South. 641; 124 Ga. 958, 53 S. E. 462; 4 R. C. L. 276; 12 Mich. 339, 86 Am. Dec. 57. The complainant is not entitled to credit for commissions on any sales made by Clark. False entries made by Simpson could not constitute an estoppel or waiver. 14 Ala. 360; 146 Ala. 525, 41 South. 853; 149 Ala. 301, 42 South. 819; 85 Ala. 19, 4 South. 639; 8 Enc. of P. & P. 11; 5 Ala. App. 467, 59 South. 309. No agent can be permitted to deal with the subject-matter of his agency, so as to promote his interest at the expense of his principal. 88 Ala. 640, 7 South. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81; 142 Ala. 528, 39 South. 229; 151 Ala. 249, 44 South. 203; 107 Ala. 331, 18 South. 277; 70 Ala. 318; and authorities supra. Therefore Simpson was not entitled to any commission for the sale of the listed land. The original contract is not valid, as there is no evidence showing authority in the president of the company to sign same. 187 Ala. 97, 65 South. 832. If the contract is valid, it does not cover the sale of orchard land, but only the sale of raw lands. 126 Ala. 535, 28 South. 517; 75 Ala. 605, 51 Am. Rep. 489; 32 Ala. 617, 70 Am. Dec. 552; 31 Ala. 501; 6 Port. 123, 30 Am. Dec. 578. One who assumes to act as the agent of another is estopped from denying his authority for his own benefit. 49 Ala. 99; 141 Ala 504, 38 South. 641; 58 W. Va. 340, 52 S. E. 462; 12 Mich. 339, 86 Am. Dec. 57. Simpson has been fully paid, under his own testimony.

Smiths, Young & Leigh, of Mobile, for appellee.

The execution of the contract was admitted by answer, and, when offered in evidence, the contract was not objected to. 31 Ala. 112, 68 Am. Dec. 159; 131 Ala. 216, 31 South. 430. Further, contract is the foundation of the suit, and was not denied under oath. Section 3967, Code 1907; 68 Ala. 35; 71 Ala. 75; 119 Ala. 285, 24 South. 734. The contract covered all the lands. 13 C. J. 536; 95 U. S. 273, 24 L. Ed. 410; 190 Ala. 634, 67 South. 424; 195 Ala. 608, 71 South. 413; 198 Ala. 57, 73 South. 423. Appellee has not been paid in full, for, if the orchards were not included in the contract, the fact that appellant accepted the benefit of such sales rendered it liable for compensation for making the sale. 128 Ala. 561, 29 South. 327; 131 Ala. 204, 31 South. 554.

THOMAS, J. The bill was for discovery and accounting for commissions alleged to be due appellee under a contract of employment by appellant, and for such other and further relief in the premises as complainant may be entitled to.

The contract of employment averred in the bill is of date September 12, 1913, and stipulated:

"In accepting employment as a real estate broker for the Grand Bay Land Company, for the sale of its lands in the territory known as the 'Mobile Department,' upon the terms to be fixed by the company, I agree to the following: (1) That I will vigorously push the sales upon the terms and conditions to be fixed by the company and to use the company's forms and contracts and none other. (2) That all applications to purchase lands and payments on said applications shall be forwarded to the office of the Grand Bay Land Company on the day received by me for approval by said company. (3) That I will pay all expenses of every kind incurred by me and will not contract any obligation in the name of the Grand Bay Land Company without first obtaining the written authority of said company. (4) That I will not be entitled to any compensation or commission on any sales or applications consummated by me if the lands so sold or applied for have been sold by said company or any of its brokers prior to the receipt of my report of sale or application. (5) I agree to accept in full payment of my commission and compensation the sum of twenty per cent. (20%) on all sales made by me and accepted by said company to be paid as follows: Fifty per cent. (50%) of cash paid on such sales until the twenty per cent. (20%) is covered. (6) Should I be negligent, dilatory, or unsatisfactory in my services, the Grand Bay Land Company shall have the right to immediately terminate this contract."

The bill further averred:

That under said contract complainant sold for respondent two classes of land, viz. improved lands, planted with Satsuma orange trees, called orchards, and unimproved lands, spoken of as "lands"; that " * * * said sales were all made in part upon credit, and payments upon the purchase money have been made from time to time, but complainant does not know, and has no means of ascertaining, except by discovery from the defendant, what payments have been made upon the purchase price of said property, and therefore does not know what sums are now due and payable to complainant under said contract;" that, "in addition to selling lands for the defendant under said contract, complainant was in the employment of the defendant and kept its books, and entered all sales of orchards and lands made for it, and all collections of purchase money

therefor, upon the books of the defendant, and kept no other accounts thereof. Complainant left the employment of the defendant in February, 1915, and has not had access to the books of the defendant since that time."

It is further averred that an accounting is necessary to ascertain what payments have been made from time to time upon the purchase price of said sales made by the complainant. Julian v. Woolbert, 202 Ala. 530, 532, 81 South. 32.

Respondent's answer contained the admission that—

" * * * The complainant * * * was employed by the respondent to make sales of two different characters: First, sales of orchards; and, second, sales of undeveloped lands, upon commission. Under the agreement between the complainant and the respondent, the complainant was to receive as his commission 20 per cent. upon all sales made by him, payable only out of the moneys collected from the purchaser in the following manner, that is to say: That upon all orchards he sold the complainant was to receive 50 per cent. of the first $500 collected, and 10 per cent. upon the balance until his total commission of 20 per cent. upon the total had been paid, while his commission upon the sale of undeveloped lands was to be paid at a rate of 50 per cent. on all cash received from the sale until his commission of 20 per cent. upon the total had been paid in full. The complainant and the respondent had been doing business under this verbal agreement for a considerable period when the complainant presented to the respondent the written contract set forth in the original bill of complaint, and the president of the company, seeing that said written contract referred only to the sale of undeveloped lands, and realizing, as is alleged in the original bill of complaint, that this word 'lands' had been used and understood between the complainant and respondent to refer only to undeveloped lands as distinguished from orchards, signed the contract, and this respondent is ready to perform it in accordance with its true intent and meaning, but the respondent insists that this contract has no application whatever to the sale of orchards, and the commission of the complainant must be paid upon the sale of orchards in accordance with the original agreement under which the sales were made, and this respondent shows to the court that, owing to the fact that all purchasers do not pay up in full, the difference in the two methods of calculation make a considerable difference in the amount of the commissions that will become due to the complainant."

The answer avers that the amounts of the commissions to which the complainant has become entitled and the amounts received by him are both incorrectly stated in the original bill of complaint, as was sought to be made to appear from the facts set forth.

[1] While the answer of the Grand Bay Land Company contains no specific reference to the sale of "listed lands" by complainant or his subagent, or of credits sought for commissions received thereon by complainant or his subagent, the relationship of the parties as principal and agent and the existence of mutual accounts are fully averred. The terms of Clark's employment by Simpson stipulated for commissions on "all sales of the company's lands" and "for 50 per cent. commission on all sales of listed property." There was evidence to the effect that sales of "listed lands" with the company were made by complainant or his subagent, and that commissions were obtained by Simpson or Clark therefrom. It cannot be successfully insisted that the terms of Simpson's contract as sales manager were broad enough to permit him or Clark, as his subagent, to compete with his principal in the sale of that company's listed lands. On all such sales he and his subagent must be treated (in a court of equity) as acting for the Grand Bay Land Company, and that commissions earned or received on sales of listed lands be treated as the property of the company, and should have been credited by complainant (respondent's only bookkeeper) on the books of the company as an asset. Halstead v. Rabb, 8 Port. 63; Hall v. McKeller, 155 Ala. 508, 46 South. 460; County of Dallas v. Timberlake, 54 Ala. 403; Phillipps v. Birmingham Industrial Co., 161 Ala. 509, 50 South. 77, 135 Am. St. Rep. 156.

[2] The mere filing of a bill for accounting implies that there were items on both sides, that the balance is uncertain, and that the true amount and to whom due must be ascertained by the court. It further implies an offer on complainant's part to pay any balance that might be found owing to the defendant without a specific averment of an offer to that effect. This is necessary to enable the court to do complete justice between the parties. Both parties are regarded as actors by the act of filing the bill, the register must state the full account between them, and the court must pass upon it, declaring their respective rights by a final decree; that is to say, of the instant bill, the complainant seeks an accounting against the defendant, but does not offer to pay any balance that may develop in favor of the latter when a full accounting is had; nor does the respondent present a cross-bill praying to be allowed such a balance. He does not even ask credit for any allowance in his favor other than that set up in his answer in deduction of the complainant's claim. He does however, pray that "this cross-complainant may have such other and further relief as it may be entitled to receive the premises considered, as in duty bound it will ever pray."

The question is: First, may the respondent be allowed his credits without a cross-bill? And, if we decide in the affirmative, may a balance in his favor be decreed without a cross-bill, if his credits exceed the claims of the plaintiff? In Alston v. Alston, 34 Ala. 15, it was held that a cross-bill is not

necessary for a guardian to obtain credits on an accounting in so far as they operate as discharges in his favor, and the principle was already recognized in Goodwin v. McGehee, 15 Ala. 232, 248, and Nelson v. Dunn, 15 Ala. 501, 515. See Taunton v. McInnish, 46 Ala. 619; Cotton v. Scott. 97 Ala. 447. 449, 12 South. 65. So there can be no question that the defendant may be allowed his credits up to the amount of the plaintiff's claim.

But how about any balance in his favor? By the later English practice, which is supposed to govern us in the absence of law or statute in Alabama to the contrary, a bill for accounting was treated differently from ordinary bills for relief, and if the defendant was found on the accounting to be the one entitled to the balance, it was customary to decree it in his favor on his answer alone, whether he filed a cross-bill or not. Colombian Government v. Rothschild, 1 Simons, 94; Clarke v. Tipping, 4 Beavan, 588; Langdell's Eq. Pl. §§ 122, 123. And there were two other exceptions to the general rule that a cross-bill is always necessary if the defendant desires affirmative relief; suits for specific performance and suits for redemption or foreclosure of mortgages. Sims, Ch. Pr. § 643. The exception allowing foreclosure of a mortgage on an answer without a cross-bill has been recognized by more than one decision of our court, the last being Seed v. Brown, 180 Ala. 8, 60 South. 98. The exception in cases of bills for specific performance has long been recognized by our court (Billingsley v. Billingsley, 37 Ala. 425; Sims v. McEwen, 27 Ala. 184; Black v. Woodruff, 193 Ala. 327, 336, 69 South. 97, Ann. Cas. 1918C, 969; Rushton v. McKee & Co., 201 Ala. 49, 77 South. 343); yet there was formerly some doubt whether the principle of Goodwin v. McGehee, supra, 15 Ala. 233, and Alston v. Alston, supra, went so far as to authorize the decreeing of a balance in favor of a defendant to a suit in accounting on his answer alone. In Masterson v. Masterson, 32 Ala. 437, it was held that a bill for accounting involving the settlement of a partnership between the personal representatives and heirs of deceased partners authorized the court to settle the whole matter, including the administration of the estates and the allotment of dower to one of the parties. The principle was, of course, that the chancery court, when taking charge of a matter too involved to separate, will do full justice between the parties before dismissing them; and that is the principle for settling a matter of account when brought into court by one of the parties.

Thus Prof. Langdell discusses the matter:

"There are two classes of cases in which the court gives relief to the defendant without filing a cross-bill, viz.: Bills for an account (in which, if it turns out that the balance is in favor of the defendant, the court will give him a decree for such balance), and bills for the specific performance of contracts (in which, if the parties differ as to the terms of the contract, and that question is decided in defendant's favor, the court will compel the plaintiff to perform the contract as thus established). But these exceptions serve to prove the rule; for they proceed distinctly upon the theory that the court only entertains such bills upon the condition that the plaintiff will consent to the same justice being rendered to the defendant that he asks for himself; and formerly this consent was required to be given expressly in the bill." Section 122.

"When the right claimed by a defendant consists simply in excluding the plaintiff from the right asserted by the latter, of course there is no occasion for a cross-bill. Therefore, when a bill is filed by a mortgagor against a mortgagee for redemption, if the defendant can show that the plaintiff is not entitled to redeem, he can obtain the benefit of a foreclosure without filing a cross-bill for the purpose; for the dismissal of a bill to redeem upon its merits is itself a foreclosure." Section 123, Langdell, Eq. Pl.

In the recent case of O'Kelley v. Clark, 184 Ala. 391, 394, 63 South. 948, this court recognized the exception in cases of accounting. The principle on which such rule, in a court of equity, rests is that all matters involved in the litigation are incapable of separation, and no party can seek relief without subjecting himself to the necessity of settling the whole dispute. The rule thus announced by our court is supported by the American and English cases. Craig v. Chandler, 6 Colo. 543, 547; Wells v. Strange, 5 Ga. 22, 28; Smith v. Hazelton, 34 Ind. 481, 486; Goldthwait v. Day, 149 Mass. 185, 187, 21 N. E. 359; Tyler v. Boyce, 135 Mass. 558, 561; Hyre v. Lambert, 37 W. Va. 26, 28, 16 S. E. 446; Grove v. Fresh, 9 Gill & J. (Md.) 280; Raymond v. Came, 45 N. H. 201; Scott v. Pinkerton, 3 Ed. Ch. N. Y. 70; Downes v. Worch, 28 R. I. 99, 65 Atl. 603, 13 Ann. Cas. 647; 1 Pom. Eq. Jur. (3d Ed.) §§ 386, 388, 393. A dictum contained in Hill v. Haskin, 51 Cal. 175, is to the contrary.

[3] If complainant is allowed credit for commissions earned on sales by himself, or his subagent, of the company's orchards and unimproved lands, he must account for commissions earned and received or paid in sales of the "listed lands" of third parties, which should have been paid for and credited upon the company's books as an asset in the conduct of its business. Of the right to commissions on such sales of "listed lands," or credits to respondent, appellant's counsel well observed that a trusted agent in charge of the principal's business, without revealing his purpose to his employer, may not set up a private business of the same nature in competition with the principal and conduct the same in its name and place, using its facility therefor. The acts and conduct of Simp-

son and his subagent in making sales of lands listed with respondent and commissions earned therein. must be treated on accounting by the register as payments by respondent of such sums received to complainant. As we have observed, in making such sales Simpson and his subagent, Clark, acted for and on the part of the land company, and without its authority or assent and concurrence; and, when Simpson comes into a court of equity for an accounting with his principal, he must seek a true accounting in which he obtains credit for the items to which he is entitled and to allow credit to the land company for all just sums and items with which that company is properly credited, growing out of the matter of which accounting is sought. This is but another way of saying that an offer to do equity is essential and implied in every bill for accounting in a court of chancery. Sims, Ch. Pr. § 643. The trial court committed reversible error in decreeing that on reference respondent be not credited for any commissions earned by Simpson or Clark upon any sales made by them of lands designated in the evidence and pleading as "listed lands."

[4, 5] The insistence of respondent that the contract only provided for the sale of unimproved lands, and not orchards, is untenable. The contract is plain and unambiguous, authorizing complainant "as a real estate broker for the Grand Bay Land Company" to sell "its lands in the territory known as the 'Mobile Department,'" and stipulating that, in the making of such sales, the "company's forms and contracts and none other" should be used. The evidence does not show any custom whereby the term "lands," as contained in the contract, was made to apply exclusively to unimproved or uncultivated lands, and not to orchards. As we view the evidence, the subsequent dealings of the parties show that the contract covered both classes of land. The only purpose of a custom is to ascertain the intent of the parties to the contract, and, when that intent is made clear by its terms and mutual construction of the contract itself by the parties thereto within the terms of the contract, it will prevail over an intent that may be presumed from previous dealings of the parties with reference to another contract. Montgomery Enterprises v. Empire Theater, 86 South. 880;[1] Jefferson Plumb. & Mill. Supp. Co. v. Peebles, 195 Ala. 608, 71 South. 413; Mobile Co. v. Linch, 198 Ala. 57, 73 South. 423; Birmingham Waterworks v. Windham, 190 Ala. 634, 67 South. 424.

[6, 7] Under the contract, Simpson and Clark, his subagent, immediately commenced to sell respondent's orchards and unimproved lands, and continued to sell both classes of lands until February, 1915, when Simpson severed his connection with the company. As

[1] 204 Ala. 566.

unimproved lands or orchards were sold, Simpson credited himself with the commissions provided for in his contract, reported the sales and credits of commissions to the company, who paid the commissions by the company's check. This procedure of sale, allowance of commission, and payment thereof was well known to its president and other executive officials, and no objection was made. This was an interpretation of the contract by the parties. That contract embraced cultivated and uncultivated lands, and authorized Simpson to sell the same and to be paid therefor the commissions stipulated. It is immaterial whether the sales were made by Simpson or Clark as his subagent; it is sufficient that such sales were promptly reported to the superior officials of the company, ratified, and part of complainant's commissions upon such sales paid. Simpson is entitled to payment of the balance of such commissions whether the sales were made under the terms of the contract or independent thereof; such service by him being approved or ratified by the vendor, and part payment made for the services so rendered and accepted. Davis v. Walker, 131 Ala. 204, 210, 31 South. 554; McFarland v. Dawson, 128 Ala. 561, 565, 29 South. 327; Hood v. League, 102 Ala. 228, 14 South. 572; Wood v. Brewer, 66 Ala. 570.

The foregoing is on the assumption that Clark was the subagent of Simpson, which appellant insists was not the case, but that Clark was employed by Simpson for the Grand Bay Land Company. Theretofore Simpson had been appellant's bookkeeper and office manager at Mobile, and as such had no authority to sell any lands of respondent company, or to employ or authorize another person to make such sales. The company had been selling its lands through sales managers under contract with it, said managers having authority to employ subagents to assist in making the sales, such subagents not being the agents of the company, but of the individuals employing them. As to this conduct of its business and the authority of such sales managers and selling agents, its president made reply as follows:

"It was the custom of the Grand Bay Land Company to pay the commissions due the sales manager under his contract, and he in turn to pay any subagents he employed or to compensate any one with whom he made arrangements to secure assistance in selling lands. Most of the sales were made through sales managers in the North, and they in turn employed subagents, and these subagents were paid by the sales managers. Q. Is it not a fact that J. M. Simpson, while he was employed as the sales manager of the Grand Bay Land Company, was without authority from it to employ on their behalf agents to sell its orchards or raw lands? A. As a sales manager Mr. Simpson had a right to employ subagents in his own behalf, but not employ them in the name of the Grand Bay Land Company and ex-

ecute contracts between the company and an agent. Q. Is it not a fact that you, from time to time, between September, 1913, and February, 1915, saw J. D. Clark in the office of the Grand Bay Land Company and knew that he was, to some extent, handling the sale of the company's orchards and other lands? A. Yes, sir; I saw J. D. Clark in the office of the Grand Bay Land Company and assumed that he was employed by Mr. Simpson as a subagent, selling the company's orchards and land as such."

Under the contract before us, the custom of the company, and authority given testified to by the president, Simpson had a right: (1) To employ Clark to sell the company's lands for Simpson under the latter's contract with the company; but (2) not to employ Clark to sell "listed lands" for him. The fact that Clark entertained the belief that he was employed by the company, had a desk in its office, and used its forms and contracts in making sales does not overturn the other testimony tending to show that such subagent was employed by Simpson under his power of agency, rather than by Grand Bay Land Company. Notwithstanding this and other evidence of the manner of Clark's employment, the fact of the lack of authority in Simpson to obligate the company to pay for Clark's service was not overturned. The sales of the company's properties were respectively credited on the books of the company in conformity with contract requirements, report thereof made to the superior official of that company, and thereafter commissions paid by the company to Simpson, he, in turn, being responsible to Clark, making payment to him. The president of the company usually came to Mobile in November and remained until May, looking after the maintenance and improvements of its orchards and other properties, the proper disbursement of the company's funds, and giving general supervision to the company's business. While in Mobile he saw Clark in the office of the company, assuming, as he testified, that Clark was employed by Simpson as a subagent, and in such capacity was selling orchards and other lands of the company. He knew that commissions were credited by Simpson on such sales, and that payments were being made thereon by the treasurer. This continued from September, 1913, until about February, 1915.

The evidence tending to show that on Clark's application (pending his discharge in bankruptcy) his contract of employment was made by or through his wife with the company did not change the relation of Clark as a subagent of Simpson to that of a sales agent of the Grand Bay Land Company. The question of agency must be determined by the fact that Simpson had no authority to contract with Clark for the company, and that his only authority was to employ Clark

as his subagent and in exact conformity to the written authority exhibited in the bill.

We shall not state the account between the parties, leaving the ascertainment of the same to the reference. The decree of the circuit court (in equity) is reversed, in that it was ordered that respondent be not credited for any commissions earned by Simpson or Clark upon any sales made of lands designated in the pleading and evidence as "listed lands." In other respects the decree is affirmed.

Affirmed in part, reversed in part, and remanded.

ANDERSON, C. J.; and McCLELLAN and SOMERVILLE, JJ., concur.

### On Rehearing.

THOMAS, J. The register will charge Simpson with the commissions received by him on sales of lands listed with Grand Bay Land Company, and not with the amount of commissions paid Clark to make the sales for that company. The evidence shows that such commissions were divided between Simpson and Clark.