[No. 24543. Department Two. August 24, 1933.]

WILBUR L. WESTER, *individually and as Executor,*
*Appellant,* v. SOUTH SEATTLE LAND
COMPANY, *Respondent.*[1]

*Poe, Falknor, Falknor & Emory,* for appellant.

*McMicken, Ramsey, Rupp & Schweppe,* for respondent.

TOLMAN, J.—This case being regularly called for trial on the merits in the court below, the plaintiff was permitted to make a trial amendment to his complaint, and his first witness was called and sworn. Thereupon, the defendant objected to the introduction of any evidence on the ground that the complaint failed to state

[1] Reported in 24 P. (2d) 633.

a cause of action. After argument, the trial court sustained the objection, and at once plaintiff asked leave to further amend his complaint. Leave was accordingly granted to amend as then proposed, and again the defendant renewed its objection to the complaint as so amended. Again the objection was sustained, resulting in a judgment dismissing the plaintiff's action. From that judgment, this appeal is prosecuted.

The questions to be considered all rest upon the sufficiency of the complaint, and that, in turn, rests very largely upon the terms and meaning of a written contract between the parties, which was made part of the complaint and is the basis and foundation of the appellant's cause of action, if he has one.

The contract is too long to be quoted in full, and in the interest of economy of both time and space we quote here the condensed, but sufficient, analysis of the contract as given in the appellant's brief.

"The recovery sought in this action may be segregated into the following classes:

"(a) Plaintiff's compensation on tracts sold, represented by the balance due on contracts of sale outstanding over and above the scheduled prices agreed upon by the parties as set forth in exhibit 'C' attached to the complaint and totaling $364,019.80.

"(b) Reimbursement for extensive expenditures made by appellant in surveys, road construction and water system work and on the Monticello property as set forth in exhibit 'B' attached to the complaint and totaling $197,221.44.

"A reading of the contract, which we now analyze, shows that the plaintiff was more than a mere broker, and that the parties intended that the placing of these extensive improvements on the property by plaintiff entitle him to a vested interest in the subject matter of the contract which will be recognized in the event of termination thereof by the principal.

"FIRST: The 'exclusive agency' for the handling and

sale of the property is granted plaintiff. No time limit is fixed.

"SECOND: Terms of sale to purchasers are fixed.

"THIRD: Plaintiff is to pay 'all the costs and expenses connected with platting said lands from time to time, the construction and opening of roads or streets, the payment for advertising, all of his own office expenses and any commissions to outside brokers and real estate agents'; the company to be 'at no expense in reference to the handling and sale' of said land. It will be noted that the plaintiff is not required to put any definite amount in improvements. He may spend as little therefor as he desires.

"FOURTH: Provides for execution of plats, contracts and deeds by company.

"FIFTH: Obligates plaintiff to use utmost endeavors to market and dispose of property 'as speedily as possible and at the best prices obtainable therefor.' Again no time limit is set on the sales.

"SIXTH: Obligates defendant to furnish abstracts, maps and records.

"EIGHTH: Provides that the defendant 'shall receive out of the proceeds of the sale of said lands under the terms of this contract the sum of $600,000 net . . . plus interest on deferred payments on contracts for the scheduled purchase prices of the respective tracts and said Wester shall receive as full compensation for his services in handling said lands all sums or amounts produced from the sales of said land over and above the net amount so to be received by the company.' · It is further stated 'that for the purpose of carrying on overhead connected with said sales, said Wester shall be entitled to receive all the cash payments up to 25% of the sales price on the respective sales and also one-half of the cash payments thereafter of principal and interest until the remaining purchase price, represented by the respective contracts is reduced to the schedule prices agreed upon by the parties hereto.' Paragraph fifteenth of the contract sets forth a concrete example of the method to be employed in determining the interest of the parties in the proceeds of the contracts.

"NINTH: The plaintiff is obligated to prepare all papers and make all collections 'up until the final settlement between the parties under the terms of this contract' and to render monthly statements.

"TENTH: This paragraph contains the only provision with respect to cancellation or forfeiture which is found in the contract. The following provision discloses that the parties recognized that in the event of termination of the contract plaintiff should have an interest in the subject matter thereof and in the unpaid balances on the contracts:

" 'Unless the said Wester under the terms of this contract sells and disposes of at least $75,000 per annum of said lands for the company's account, this contract may be cancelled by the company and thereupon an adjustment and settlement shall be made between the parties hereto based upon their respective rights under the terms of this agreement.'

"ELEVENTH: The same idea expressed in the preceding paragraph with respect to plaintiff's rights on termination is also clearly expressed here:

" 'In the event of the death of the said Wester during the life of this contract, a *pro rata* adjustment shall be made between the parties hereto, taking into consideration ANY UNPAID CASH INVESTMENTS the said Wester may have in said property by reason of advances made in connection with the handling of said property.' It is further stated that when the company has received the full net purchase price of $600,000, plus interest, either in cash or cash and contracts, plaintiff shall be entitled to all unsold land and surplus proceeds of sales.

"TWELFTH: The company agrees to advance the 1921 taxes which are 'a charge against the interest of said Wester.' Plaintiff is obligated to pay taxes and assessments. We then find the only provision contained in the contract with respect to the period of which it is to run:

" 'The understanding and agreement of the parties contemplates the sole handling by the said Wester of all of said lands and the producing for said company in money and contracts of $600,000 net and interest on deferred payments on contracts as above set forth

within a period not exceeding eight years from this date and that any lands remaining unsold and any excess cash in real estate contracts over and above that amount shall belong to and go to the said Wester as additional compensation for handling said property under the terms of this agreement and that the said Wester will devote his best efforts to the carrying out of this contract until he has produced to the company the amount above mentioned as coming to it out of the sale of said lands.'

"We do not find in this paragraph any definite statement that the contract shall be terminated at the end of the eight year period providing the company has not by that time realized the full scheduled price of the land.

"THIRTEENTH: Neither the contract 'nor any interest therein' is to be assigned by Wester. Here again we find a recognition of a tangible interest in the plaintiff.

"FOURTEENTH: Obligates the parties to agree upon release price of tracts having an aggregate value of not less than $700,000 and provides desirable and less desirable tracts shall be sold in the same proportion.

"SIXTEENTH: Provides for a yearly audit of plaintiff's books at the joint expense of parties.

"Amendment of August 3, 1921.

"On August 3rd, 1921, the contract we have been discussing was amended by the parties by written instrument, a copy of which is attached to the complaint, marked exhibit 'B'. This amendment is mainly concerned with the method of apportioning the proceeds of the sales of the property, amplifying and explaining those provisions contained in the 8th and 15th paragraphs of the original contract with respect to a division of the sales moneys between the plaintiff and the defendant. The amendment does not set a time limitation but contains the recitation that:

"'It was the intention of the parties (a) That the company should eventually receive the principal sum of $600,000 . . . plus a part of the interest paid by purchasers on their respective contracts.'

"It will be seen that plaintiff was entitled to compensation in two ways:

"(a) All payments made on the contract up to 25% of the purchase price and one-half of all subsequent payments until, either he had received in payments the excess over the scheduled price to the company or the company had received payments equaling the amount of the scheduled price, in which latter event plaintiff would be entitled to all remaining payments (paragraphs 8 and 15 of contract and amendment thereto of August 3rd).

"(b) All of the property and contracts remaining after defendant had received $600,000 net in money and contracts."

For the same reasons, we quote respondent's analysis of the complaint, as amended, as sufficiently indicating what it contains and what are thought to be its fatal defects and omissions.

"The complaint alleges that appellant and respondent entered into the contract of May 23, 1921, and the amendment of August 3, 1921, attached to the complaint as exhibits 'A' and 'B'. The complaint further alleges that on or about the 2nd day of March, 1926, the said agreements just referred to, being exhibits 'A' and 'B' attached to the complaint, were orally modified, and that under said oral modifications the appellant was authorized and permitted to retain and use in connection with the costs and expenses connected with the platting of said lands from time to time, in the construction and opening of roads and streets thereon and in the construction of buildings, water system, pipe lines, etc., the payments that otherwise, under the written contracts, were required to be remitted to the respondent, and that said agreements (exhibits 'A' and 'B' to the complaint) were further orally modified, in that the period of duration of eight years which was originally stipulated in the contract was made to extend indefinitely, or until such time as the respondent had received the consideration for the lands, as provided in said contracts, and then states: 'Otherwise the said contracts attached hereto and marked exhibits "A" and "B" remained as previously provided.'

"The complaint further alleges that under the oral modification referred to in the preceding paragraph the appellant retained, and applied, in accordance with such authorization, the sum of $124,992.31 of respondent's money; that prior to 1926 the respondent had advanced to the appellant about $40,826.89 to apply upon taxes becoming due on said land; that on August 15, 1931, there likewise existed a large amount of unpaid taxes upon said lands, the exact amount of which, it is alleged, is unknown to appellant. It is then alleged that on or about the 15th day of August, 1931, the respondent, without prior notice thereof, served upon the appellant a written notice terminating said agency agreement.

"The complaint then alleges that on said 15th day of August, 1931, and at the time the notice of termination just referred to was given, the appellant had, under his agency contract, sold to purchasers lands covered by the said agency contract under which contracts of sale and options outstanding the balance of the purchase price unpaid thereon was approximately the sum of $422,000. A list of such contract purchasers was attached to the complaint as exhibit 'C', and likewise a list of options were attached to the complaint as exhibit 'C-1'.

"It is next alleged in the complaint that appellant caused to be invested in buildings, construction of roads, streets, clearing, water systems, and pipelines, which are permanent improvements upon the property of respondent, the sum of $197,221.44, an itemized statement of such improvements being attached to the complaint in the form of exhibit 'D', and that such improvements in which the funds were so invested on said 15th day of August, 1931, were of the value of $197,221.44; that the Monticello Poultry Plant, referred to in exhibit 'D', in which there is alleged to be invested the sum of $102,711.48, is a highly specialized and modernized poultry industry located on the unsold lands described in the contracts, the title to which is in respondent; that the 'equity' of the appellant in the said sales contracts referred to as exhibits 'C' and 'C-1' was on the 15th day of August, 1931, of

the value of $364,019.80, plus accumulated interest. That at all times the lands covered by the said contracts and amendments thereto consisted of unimproved acreage located in King county, Washington, and were of no rental value.

"The complaint then avers that upon the respondent terminating the agency contracts referred to, on or about the 15th day of August, 1931, the respondent, through its officers and agents, took over the collec- tions arising from the real estate contracts and the options for the purchase of the lands; that the appellant's 'equity' and right in and to the said real estate contracts and options, and in and to the said permanent improvements over and above any offsets which the respondent can lawfully make to the same, exceeds the sum of $300,000.

"Paragraph XIII of the complaint, added as a trial amendment, provides that as to certain contracts the entire amount owing the respondent on account thereof had been paid to it, and that appellant was entitled to have those contracts assigned to him.

"The complaint contains no allegation of performance by the appellant of the agency contract and amendment thereto, referred to in the complaint, either specifically or in the general language permitted by Rem. Comp. Stat., § 288. On the contrary, the appellant's own complaint contains, in paragraph V, a direct averment that there were a large amount of taxes unpaid upon the said lands covered by the said agency contract, and paragraph 'Twelfth' of the agency contract, attached to the complaint as exhibit 'A', contains the express agreement of the appellant that all taxes and assessments after the year 1921 were to be paid by the appellant before delinquency. . . .

"After the trial court had made this ruling that the complaint did not state a cause of action because of the affirmative allegation of non-payment of taxes and non-performance by appellant, appearing upon the face of the complaint, the appellant made another trial amendment to paragraph V of the complaint, in which he alleged that, as to the taxes not paid by the appellant during the said period of the agency contract, the respondent corporation was, or in the exercise of rea-

sonable care should have been, cognizant of the non-payment of the said taxes by the appellant and of appellant's inability to pay the same out of the proceeds of the sales of said property by reason of the fact that the said proceeds were utilized by the appellant in improvements upon the property and in effecting the sale of the same, and that, notwithstanding the said facts, the respondent, during said period, permitted the appellant to continue in the sale of said properties under the said agency agreement and to expend his portion of the proceeds of the sale of said properties in the improvement thereof and in effecting said sales, without at any time prior to the 14th day of August, 1931, making complaint to the appellant with respect to non-payment of the said taxes, and that by its said action the respondent had estopped itself to contend that the claims urged by the appellant in this suit are not maintainable by reason of the non-payment of the said taxes by appellant; that subsequent to the date of the termination of said agency agreement by the respondent, the respondent collected the sum of approximately $42,000 from executory contracts for the sale of real property previously negotiated by the appellant, and that appellant's rightful share of said collections amounts to approximately $25,000 and is sufficient to pay a substantial portion of the taxes which have accrued subsequent to 1926.

"After this trial amendment was made, the trial judge again ruled that the matter therein contained was legally insufficient to give appellant a cause of action, inasmuch as the appellant was in default and the matter alleged in the last trial amendment was, upon its face, an insufficient excuse for non-payment."

Thus it will be seen that appellant is here claiming that he had equities in outstanding unpaid sales contract balances, when the contract was terminated, in a very large sum, and in addition that he had placed improvements on unsold lands belonging to the respondent in the course of the performance of the contract, also amounting to a large sum. He sought by his complaint not to prevent the termination of the con-

tract, not to specifically enforce it or to enforce it at all in the sense in which that term is generally used, but he sought only an accounting for what had been earned by him under the contract while it was in force, and to recover that which respondent had received or would receive as a result of what he had done prior to the admitted termination of the contract and which, under the terms of the contract, belonged to him.

The trial court seems to have rested his ruling upon the fact the appellant had not paid or tendered payment of the taxes which the contract bound him to pay. That fact might be important if the appellant was here seeking specific performance of the contract, or was defending against a forfeiture of the contract, or if the contract by its terms provided for a forfeiture of all advances and unrealized earnings upon default in payment of taxes or default on any other covenant to be performed by the appellant. But here we can see as yet no such question raised by the complaint, at least the question of an accounting is separable from all other possible questions.

The contract provides for no forfeiture in any event or under any circumstances. In the tenth paragraph, as already quoted, it is provided that, if appellant breach his covenant to sell at least $75,000 worth of land per annum, the contract may be cancelled by the respondent

". . . and thereupon an adjustment and settlement shall be made between the parties hereto based upon their respective rights under the terms of this agreement."

Also, in the next paragraph of the contract a like provision for a fair accounting and settlement between the parties is made to apply in the event of appellant's death before full performance.

These provisions, coupled with the exclusive agency,

the right to receive title to the unsold land when the fixed sum of $600,000 and interest has been paid to the respondent, the total absence of any forfeiture clause, and the fact that the respondent executed the contract with all the formalities required in the execution of a deed, indicating that the parties considered the contract as granting an interest in the real estate, all force the conclusion that such an interest was here granted to the appellant in the subject matter of the contract as to entitle him to an accounting upon a termination of the contract for any cause.

The enterprise had in it something of the nature of a joint adventure, or of a special and limited partnership. In all such relationships, a defaulting partner does not by his default forfeit his interest in the partnership assets, but, notwithstanding, is entitled to an accounting and to receive what may remain of his share after his obligations have been met therefrom. So here we think enough is pleaded, aided by the terms of the contract which is a part of the complaint, to permit appellant to proceed by offering proof in support of the matters alleged. The theory of accounting in equity is well stated as follows:

"The mere filing of a bill for accounting implies that there were items on both sides, that the balance is uncertain, and that the true amount and to whom due must be ascertained by the court. It further implies an offer on complainant's part to pay any balance that might be found owing to the defendant without a specific averment of an offer to that effect. This is necessary to enable the court to do complete justice between the parties. Both parties are regarded as actors by the act of filing the bill, the register must state the full account between them, and the court must pass upon it, declaring their respective rights by a final decree;" *Grand Bay Land Co. v. Simpson,* 205 Ala. 347, 87 So. 186.

No question is raised by the complaint as to the rightfulness of the termination of the contract by respondent for the failure to fully perform. Even though there be no forfeiture clause in the contract, that omission does not require the respondent, in spite of default, to let the contract continue in force indefinitely. We apprehend that, where default occurs under such a contract, the injured party may, certainly with the acquiescence of the one at fault, at once call a halt and rightfully demand that matters proceed no further. Such an ending of the contract would not be a rescission in any sense of the word, but a termination only, leaving the interests which had been acquired under the contract up to the moment of its ending to be segregated by an accounting between the parties, voluntarily or by a court of equity.

Since there was no rescission and no wrongful termination of the contract, many of the authorities cited by appellant are not here applicable, and will not be reviewed. Cases are cited, however, which uphold the principle that, when one has by his efforts or money enhanced the value of the real property of another with the consent or by the invitation of the owner, the value of the enhancement may be recovered, even though the person making the advancement is not without fault. *Hanna v. Haynes,* 42 Wash. 284, 84 Pac. 861. But we refrain from citing authorities which are only remotely in point, because it seems to us that reason supports our position.

*Cook v. Dane,* 43 Wash. 588, 86 Pac. 947, relied upon by the respondent, has no application here. There, the party in default sought by a suit in equity to compel specific performance of the contract, and was properly denied relief. *Johnson v. Mangum,* 227 S. W. (Tex. Civ. App.) 750, is a similar case and announces the same principle, and is likewise inapplicable.

The other question presented to the trial court and again presented here is as to the statute of frauds and its effect on the oral modification of the contract pleaded in paragraph four of the complaint. This allegation amounts to no more than an anticipation of the defense of an offset or a suggestion of a credit which the appellant is willing to allow. Whether appellant retained money belonging to the respondent to assist in paying the cost of improvements on the land with its consent, as pleaded, or without its consent or knowledge, is of little, if any, importance in an accounting between the parties. In either event, the same credit would be allowed. Appellant bases no right upon, and seeks no recovery because of, the alleged oral modification of the contract. That allegation, while it may be surplusage, does not render the complaint demurrable.

In our opinion, the complaint as amended states a cause of action for an accounting, and the trial court erred in sustaining the objection to the introduction of any evidence thereunder.

The judgment is reversed, with directions to proceed to a trial on the merits.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.